# In the United States Court of Federal Claims

Case No. 08-261C
Filed Under Seal April 25, 2008
Reissued for Publication May 2, 2008
FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| WATTS-HEALY TIBBITTS A JV | * | |
| *Plaintiff,* | * | |
| v. | * | DFARS 252.236-7010; |
|  | * | "American Preference Policy;" |
| THE UNITED STATES, | * | Pub. L. No. 98-396; 98 Stat. 1369, |
|  | * | 1398 (1984); Post-Award Bid |
|  | * | Protest; Temporary Restraining |
| *Defendant,* | * | Order; Preliminary and Permanent |
| and | * | Injunction; Arbitrary and Capricious |
|  | * | *Chevron U.S.A., Inc. v. Natural* |
|  | * | *Resources Defense Council, Inc.*, 467 |
|  | * | U.S. 837 (1984); 10 U.S.C. § 2851(a) |
| IBC/TOA CORPORATION, | * | |
| *Defendant-Intervenor.* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

*Michael H. Payne*, *Esquire,* Payne Hackenbracht & Sullivan, Ft. Washington, PA, for Plaintiff.

*Stephen C. Tosini*, Trial Attorney, with whom were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C.; and Robert E. Little, Of Counsel, Department of the Navy, Washington, D.C., for Defendant.

*S. Lane Tucker*, Perkins Coie LLP, Anchorage, AK, for Defendant-Intervenor.

### OPINION AND ORDER

**SMITH**, Senior Judge.

This post-award bid protest concerns a request by Plaintiff to enjoin performance and rescind the Navy's award of a contract to ICB/TOA Corp., Joint Venture, for the Kilo Wharf Extension at the Commander Naval Region Marianas, Main Base, Guam. The solicitation at issue

was subject to the requirements of the clause found in the Defense Federal Acquisition Regulation Supplement (DFARS) entitled "Overseas Military Construction – Preference for United States Firms" commonly referred to as the "American Preference Policy." Found within this regulation is a clause that states "[o]ffers from firms that do not qualify as United States firms will be evaluated by adding twenty percent to the offer." DFARS 252.236-7010. Plaintiff argues that because TOA is incorporated in Japan it is, therefore, not a "United States firm" thus the twenty percent preference must be added to its bid pursuant to the DFARS. On the other hand, the Navy asserts that this provision does not automatically impose a twenty percent premium upon bids made by joint ventures between United States firms and foreign contractors and its interpretation that IBC/TOA is a "United Sates firm" is a permissible construction.

Plaintiff is presently before the Court requesting it to issue a temporary restraining order, a preliminary and permanent injunction and declaratory judgment. After full briefing, oral argument and careful consideration, and for the reasons set forth below, the Court **DENIES** Plaintiff's motion for a temporary restraining order. At this time, the Court also **DENIES** Plaintiff's request for further relief.

## **FACTS AND PROCEDURAL HISTORY**

On October 5, 2007, the Naval Facilities Engineering Command, Pacific, issued a solicitation requesting proposals to construct the Kilo Wharf extension in Guam. The solicitation provided that the award would be based on technical factors and price. The solicitation further stated that the technical evaluation factors, when combined, were equal to price for purposes of determining the awardee. Further, the solicitation stated that the price range was estimated to be between $65,000,000 and $85,000,000. Compl. at ¶¶ 6-8.

This solicitation was subject to the DFARS 252.236-7010, entitled "Overseas Military Construction — Preference for United States Firms," which provides:

(a) *Definition*. "United States firm," as used in this provision, means a firm incorporated in the United States that complies with the following:

(1) The corporate headquarters are in the United States;

(2) The firm has filed corporate and employments tax returns in the United States for a minimum of 2 years (if required), has filed State and Federal income tax returns (if required) for 2 years, and has paid any taxes due as a result of these filings; and

(3) The firm employs United States citizens in key management positions."

(b) *Evaluation*. Offers from firms that do not qualify as United States firms will be evaluated by adding 20 percent to the offer.

(c) *Status*. The offorer _____ is _____ is not a United States firm.

DFARS 252.236-7010.[1]

After issuing the solicitation, the Navy responded to a number of pre-proposal questions including several questions regarding the DFARS 252.236.7010. Answers were provided in a series of published "Notices" that all prospective bidders could review. Compl. at ¶ 12. One such question requested clarification of the twenty percent rule by asking:

> "What happens if there are two Japanese firms, . . . and another U.S. firm in the LLC? What would be . . . [the] percentage to avoid foreign entity application?" The Navy responded that the terms of DFARS 252.236-7010 governed.

D.Intervenor Br. at Attachment B.

Another prospective bidder questioned whether a joint venture between a foreign and a United States firm could be considered a "United States firm" under the DFARS 252.236-7010. Here, the Navy responded:

> "[f]ormation of a JV or partnership with a non-U.S. firm is not automatically disqualifying for purposes of the 20% preference. However, the JV or partnership must meet the requirements of DFARS 252.236-7010."

D.Intervenor Br. at Attachment C.

On November 19, 2007, the bidders provided technical proposals to the Navy. Watts-Healy Tibbitts and IBC/TOA Corporation were two of the bidders. IBC is incorporated in Ohio and operationally based in Guam and has performed construction work for the Navy on previous military construction projects. Def. Br. at 4-5. TOA Corporation is a Japanese corporation that specializes in marine construction and dredging and has also performed work on other government contracts. *Id*. at 5. Watts Constructors LLC is an Iowa corporation, with offices located in Honolulu, Hawaii. Compl. at 2. Healy Tibbitts Builders, Inc. is a New Jersey corporation, with offices located in Aiea, Hawaii. *Id.* Price proposals were submitted by these corporations by December 5, 2007. Compl. at ¶ 17. The Navy then held discussions with bidders beginning December 19, 2007, and by March 6, 2008, the bidders had furnished proposal revisions. *Id.* at ¶18. IBC/TOA submitted a bid in the amount of $83,838,018 as compared to Plaintiff's proposed price of $95,146,204. P. Br. at 2.

---

[1] Pursuant to DFARS 236.570(c)(1), "Construction in Foreign Countries," this clause is required to be inserted in solicitations for military construction contracts funded with military construction appropriations estimated to exceed $1,000,000 and when contract performance would occur in a United States outlying area in the Pacific or in a country bordering the Arabian Gulf.

On March 26, 2008, Plaintiff was informed that an award had been made to IBC/TOA. *Id.* at ¶ 19. Plaintiff requested a debriefing which was held on April 2, 2008. *Id.* at ¶ 22. At the debriefing Plaintiff learned that the "American Preference Policy" was not applied to the IBC/TOA proposal. On April 7, 2008 Plaintiff was advised by the Navy that it believed it was correct in not applying the twenty percent preference to the IBC/TOA proposal as it had determined that the joint venture was deemed to be an American firm that was headquartered in Guam. *Id.* at ¶¶ 23-26.

On April 10, 2008, Watts-Healy Tibbitts filed this post-award bid protest requesting a temporary restraining order, a preliminary and permanent injunction and declaratory judgment. On April 15, 2008, Defendant and Defendant-Intervenor filed their responses. Oral argument was held later that day and an oral decision was rendered on April 18, 2008. This Opinion reduces that oral decision to writing.

## STATUTORY BACKGROUND

The "American Preference Policy," as it is commonly referred, was the result of a Congressional directive to the Department of Defense to develop a preference plan to provide competitive assistance to United States companies in the award of construction contracts in the Persian Gulf/Indian Ocean area. H.R. Conf. Rep. No. 1433, 96th Cong., 2d Sess. 4 (1980). In 1983, the House Appropriations committee received testimony that the presence of American contractors was decreasing despite the increase in military construction. Therefore, in 1984, in order to increase opportunities for United States firms in the Pacific area, Congress instituted an "American Preference Policy" in the American territories of the Pacific and on Kwajalein Island. *See Matter of Black Construction Corp.*, B-250647, 93-1, CPD 113. This provision allowed a twenty percent differential between the bids of "United States contractor[s]" and "foreign contractor[s]" before the "foreign contractor['s] price would be treated favorably." *See* Pub. L. No. 98-396; 98 Stat. 1369, 1398 (1984).[2]

In order to comply with Pub. L. No. 98-396 and its successors, the Department of Defense (DOD) published an interim rule in the Federal Register and requested public comment. *Rules and Regulations*, 62 Fed. Reg. 2,856 (Jan. 17, 1997). Thereafter, DOD issued DFARS 252.236-7010 as a final rule. *Rules and Regulations*, 62 Fed. Reg. 34,114, 34,115 (June 24, 1997); *see supra* FACTS.
Pursuant to 10 U.S.C. § 2851(a), the Department of Navy is granted the authority to construe DFARS provisions that concern military construction:

> Each contract entered into by the United States in connection with a military construction project . . . Shall be carried out under the direction and supervision of . . . the Secretary of the Navy (acting through the Commander of the Naval Facilities Engineering Command), or such other department of Government agency as the

---

[2] In this statute, Congress left the term "United States contractor" undefined.

>Secretary of Defense approves to assure the most efficient, expeditious, and cost-effective completion of the project.

10 U.S.C. § 2851(a).

At issue before the Court is whether the Navy correctly interpreted the DFARS 252.236-7010 as not requiring the twenty percent premium to be added to the bids of joint ventures between United States firms and foreign contractors. Plaintiff argues that this interpretation "defies all logic, contradicts the plain meaning of the law and regulation, and completely ignores the underlying Congressional policy." P. Br. at 12-13.

## STANDARD OF REVIEW

In order to obtain a preliminary equitable relief, a party must demonstrate 1) a substantial likelihood of success on the merits; 2) specific, irreparable harm; 3) the balance of the hardships tips in its favor; and that 4) the preliminary injunction is in the public interest. *Anton/Bauer, Inc.. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003). Further, it has been held that injunctive relief for a disappointed offeror is appropriate "only in extremely limited circumstances." *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 120 (2000) (quoting *CACI, Inc. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983)).

In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006). *Arch Chems, Inc. v. United States*, 64 Fed. Cl. 380, 384-85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

To determine whether the Agency's decision was one that was arbitrary and capricious, the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1333 (Fed. Cir. 2001). Furthermore, "[d]eference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations." *M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986). "This deference is particularly great when a negotiated procurement is involved and is greater still when the procurement is a 'best value' procurement." *Bean Stuyvesant, LLC v. United States*, 48 Fed. Cl. 303, 320 (2000) (citations omitted). The Court will "interfere with the government procurement process 'only in limited circumstances.'" *EP Production, Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (citations omitted). And, in evaluating an agency's decision, the Court cannot "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

**DISCUSSION**

**A. The Navy's Interpretation is Reasonable**

It is well settled that an "agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) the Court "must first carefully investigate the matter to determine whether Congress's purpose and intent on the question is judicially ascertainable." *Times V.I., Inc. v. United States*, 157 F.3d 879, 881 (Fed. Cir. 1998) (citing *Chevron*, 467 U.S. at 842-43 & n.9). "Only if, after this investigation, we conclude that Congress either had no intent on the matter, or that Congress's purpose and intent regarding the matter is ultimately unclear, do we reach the issue of *Chevron* deference." *Id.* The second step of the *Chevron* standard is to determine whether the agency's interpretation of the statute is reasonable in light of the statute and its purpose. While "formal" *Chevron* deference is probably not applicable here, the analytical framework is still appropriate. *See United States v. Mead Corp.*, 533 U.S. 218 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

In this case, the one thing that is clear to the Court is that both the statute and the DFARS do not clearly define whether a joint venture between an American company and foreign corporation is an American company for the purposes of the twenty percent differential to be applied to foreign corporations. The policy behind the Act is designed to give American corporations a chance to compete in distant locations – and the combined American-foreign venture may actually benefit this policy. As explained in the contracting officer's declaration, in addition to expanding the pool of United States firms that may participate as United States contractors, the Navy's construction of DFARS 252.236-7010 will assist in implementing the agreement between the United States and Japan for the relocation of 17,000 Marines and dependents from Okinawa to Guam. Yoshimira Decl. at ¶¶ 8-9.

The Navy has seemingly evaluated the standard on a contract-by-contract basis, and in this case the Court concludes that the agency made a reasonable determination that it would consider United States joint ventures that may include foreign firms as "United States contractors" and "United States firms." *See* Yoshimura Decl. However, while messy in theory and productive of litigation, these case-by-case decisions are not inconsistent with the broad goals of the statute. *Thomas Jefferson Univ.*, 512 U.S. at 512. Therefore, the Court must defer to the likelihood that Navy's interpretation of the statute is allowable, and so preliminary equitable relief would be unjustified.

### B.  The Navy's Interpretation was not Arbitrary and Capricious

In determining whether the Agency's decision was one that was arbitrary and capricious the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process.  *Impresa,* 238 F.3d at 1333.  As held above, the Court has already concluded that the contracting officer's decision was reasonable based on all facts available in this very expedited proceeding.[3]  Therefore, what is left is that the Plaintiff's only legitimate claim to arbitrary and capricious action would be if the proper definition of the joint venture was as a foreign bidder.  On the current record it is impossible to say that the Navy's choice of policy violated either the statute or the DFARS.  Thus, the Court cannot conclude that the agency's action was arbitrary and capricious on these facts..

### C.  The Plaintiff has not satisfied the factors to obtain a Preliminary Injunction

In order to obtain a preliminary injunction, a party must demonstrate 1) a substantial likelihood of success on the merits; 2) specific, irreparable harm; 3) the balance of the hardships tips in its favor; and that 4) the preliminary injunction is in the public interest.  *Anton/Bauer, Inc.. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003).   The absence of any prong of this test results in denial of injunctive relief.  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).  As the Court has already addressed the questionable success of this matter on the merits, in looking at the other factors it is further shown that the Court must deny any equitable relief at this time.  For instance, the balance of the hardship weighs against Plaintiff in this case as this post-award bid protest was filed on the eve of contract performance in a large and complex construction project.  In addition, the public interest requires the completion of the project on time.

However, the Government should clarify the policy to prevent disappointed bidders from reasonably believing they have a cause of action.  The existing confusion cannot be solved by equitable relief in a specific case but requires the Navy and the other agencies concerned to review the policy directive of the statute and devise a coherent policy to implement it.  At the very minimum, this requires guidelines for the source selection personnel so that parties will have some guidance.

For example, when the prospective bidders posed questions requesting clarification of the twenty percent rule, the Navy's only response was that the terms of the DFARS 252.236-7010 governed.  D.Intervenor Br. at Attachment B.  And, when asked specifically whether a joint venture

---

[3] Plaintiff's complaint and motion for a temporary restraining order and preliminary and permanent injunction were filed on April 10, 2008.  Responses were filed on the morning of April 15, 2008 and oral argument was held later that afternoon.  An oral decision was rendered on April 18, 2008.

7

between a foreign and a United States firm could be considered a "United States firm" under DFARS 252.236-7010, the Navy responded to this question by stating "[f]ormation of a JV or partnership with a non-U.S. firm is not automatically disqualifying for purposes of the 20% preference. However, the JV or partnership must meet the requirements of DFARS 252.236-7010." D.Intervenor Br. at Attachment C. In these instances, it is clear to the Court that the response to the project specific questions would not have been very helpful to some one trying to find out if they had improperly lost a contract.

The other possible approach is a definitive regulation establishing some bright lines after both notice and comment as well as agency assessments of what rules or guidelines will really promote the ability of United States contractors to fairly compete in these contracts.

## **CONCLUSION**

For the reasons set forth above, the Court must defer to the agency at this time. Therefore, the Court hereby **DENIES** Plaintiff's motions for a temporary restraining order and a preliminary injunction. Further requested equitable relief awaits a more extended process.

**It is so ORDERED**.

s/ Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE