**Potential Responsibility Issues re IBC/TOA**

After the announcement of an award to IBC/TOA Corporation on March 26, 2008, and following the filing of our protest on April 9, 2008, we became aware of important information that significantly affects the eligibility of IBC/TOA for an award of a federal contract.

FAR 9.1 provides the requirements for determining the responsibility of a contractor and FAR 9.102(a) provides that the rules regarding responsibility apply to all proposed contracts with any prospective contractor that is located --

(1) In the United States or its outlying areas; or

(2) **Elsewhere**, unless application of the subpart would be inconsistent with the laws or customs where the contractor is located.

Pursuant to FAR 9.406-2(a)(5), a federal government contractor may be debarred for the commission of any offense "**indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor.**"

In addition, all contractors are required to furnish representations and certifications on the ORCA website. One of those certifications, pursuant to FAR 52.209-5, requires a certification as follows:

> (B) Have * have not *, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement,

theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(C) Are * are not * presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in paragraph (a)(1)(i)(B) of this provision.

TOA Corporation and the joint venture of IBC/TOA Corporation both certified, in their respective ORCA certifications, that they had not been involved in any offenses in connection with obtaining a public contract within the last three years. In light of the following information, we ask that you consider whether the TOA Corporation has provided a truthful certification, and whether it has made the sort of disclosure that is expected of a contractor who wishes to do business with the United States:

**Wednesday, March 15, 2006**

The Japan Times:
(C) All rights reserved

MORE DEFENSE PROJECTS NAMED

**Trio's bid-rigging charges grow**

Tokyo prosecutors again indicted three men Tuesday over new allegations of bid-rigging for additional public works projects in their past posts at the Defense Facilities Administration Agency, investigative sources said.

The prosecutors also served summary indictments seeking the imposition of fines over the alleged bid-rigging on representatives from eight contractors that won the bids in question and a former agency official who was hired by a midsize contractor after retirement.

The three men, indicted earlier for alleged bid-rigging including that involving engineering construction projects at U.S. military bases in Yamaguchi and Nagasaki prefectures, were prosecuted for construction projects at the Defense Agency's Ichigaya complex in Tokyo, the sources said.
The suspects are Mamoru Ikezawa, 57, a former technical councilor at the facilities agency, Takayoshi Kawano, 57, Ikezawa's successor in the post, and Takashige Matsuda, 53, a former facilities inspection officer in the agency's general affairs department.
Ikezawa was released later in the day on 4 million yen bail.

According to the indictment by the Tokyo District Public Prosecutor's Office, the three conspired with representatives of major contractors in rigging bids for a number of construction projects.

The cases include three projects for relocating a runway at the **U.S. Marine Corps Iwakuni Air Station in Yamaguchi Prefecture**. It fetched successful tender prices totaling about 10.7 billion yen between January and March 2004.

Other cases are two pier construction projects at the U.S. naval base in Sasebo, Nagasaki Prefecture. Bidding for them was conducted in March 2004 and amounted to a combined 4.3 billion yen.

Prosecutors believe the three suspects played leading roles in these cases, investigative sources said.

**The bids were allegedly rigged so that joint ventures, including those led by Kajima Corp., Toa Corp. and Tekken Corp., would win the Iwakuni projects.**
Advance agreements were also made to award the Sasebo contracts to two joint ventures -- one led by Penta-Ocean Construction Co. and the other by Nissan Rinkai Construction Co.

**Prosecutors suspect the bid-rigging has taken place for about 30 years, with agency officials giving favorable treatment to private firms in exchange for securing posts for bureaucrats after they retire, the sources said.**

## TOA CORPORATION RECEIVES ADMINISTRATIVE DISPOSITION ORDER FROM JAPAN FAIR TRADE COMMISSION

**Fri Jun 22 10:15:00 EDT 2007**

**TOA CORPORATION** announced that Japan Fair Trade Commission has ordered the Company administrative disposition as well as the **payment of JPY 111.98 million** as the **surcharge for the violation of Antimonopoly Law**. This development is with regards to the tender of the construction work order from Defense Facilities Administration Agency.

**FTC Orders Obayashi Corporation and 13 Firms to Pay JPY 2 Billion for Bid-rigging-Jiji Press**

**Thursday, 16 Aug 2007**

Jiji Press reported that Fair Trade Commission (FTC) will order Obayashi Corporation and 13 general contractors to pay surcharges totaling more than JPY 2 billion for rigging bids for a subway extension project in Nagoya. The bidding for the project in question was held in February and June 2006. The 14 firms won the order for a total of JPY 19.2 billion. The FTC usually imposes surcharges equivalent in amount to 10% of sales generated as a result of illegal practices, including bid-rigging. However, five firms, including Kajima Corporation, Shimizu Corporation and **Toa Corporation**, are expected **to face 15% surcharges, as they were involved in other bid-rigging cases**. In the case, public prosecutors in March 2006 indicted officials of Obayashi, Kajima, Shimizu, Okumura Corporation and Maeda Corporation for rigging the bid in violation of the Antimonopoly Law.

## TOA CORPORATION RECEIVES BUSINESS SUSPENSION ORDER

**Tue Sep 25 11:20:00 EDT 2007**

**TOA CORPORATION** announced that Ministry of Land, Infrastructure and Transport has issued **business suspension order** to the Company in accordance with Construction Industry Law. This development follows the Company's violation of Antimonopoly Law regarding the construction work order by Defense Facilities Administration Agency. The Company will refrain from any civil engineering or construction works for public sector clients or for private sector clients with grant money in Tottori, Shimane, Okayama, Hiroshima and Yamaguchi prefectures. **The suspension order is applicable for 30 days during the period from October 9, 2007 to November 7, 2007**.

## Japan FTC Fines 14 Contractors ¥1.9 Billion for Bid-Rigging
**11/14/2007**

Japan's Fair Trade Commission ordered 14 general contractors to pay fines totaling ¥1.92 billion for **rigging bids on a subway extension project** in the central Japan city of Nagoya. The FTC confirmed that the bid-rigging involved a total of 33 general contractors from across Japan and ordered all of them to halt the illegal practice and devise measures to prevent any repetition of such acts. The 33 firms, led by an Obayashi Corp. adviser who has been ruled guilty of the bid-rigging. Of the 33 firms, **14 that won orders were fined**. Among them, Shimizu Corp., Kajima Corp., Tekken Corp., **Toa**

**Corp.** and Zenitaka Corp. were **instructed to pay at a rate 50% higher than others because they had been fined in other bid-rigging cases**, including one in Niigata. Hazama Corp. was exempted from the fines as the company voluntarily admitted its act of bid-rigging before the FTC launched its investigation into the Nagoya subway case. But the company received an order to halt any bid-rigging practices.

TOA CORPORATION RECEIVES BUSINESS SUSPENSION ORDER FROM MINISTRY OF LAND, INFRASTRUCTURE, TRANSPORT AND TOURISM

Mon **Mar 24 08:10:00 EDT 2008**

**TOA CORPORATION** announced that it has received **a business suspension order** from Ministry of Land, Infrastructure, Transport and Tourism, following to the Company's violation of antimonopoly law related to its subway construction work in Nagoya and the receipt of payment order received by Fair Trade Commission. The Company is expected to stop the civil engineering works related to public or private works supported by assistance aids during the period **from April 7, 2008 to May 6, 2008**.

As is evident from the information reported above, the TOA Corporation has been implicated in and has been found guilty of bid rigging in Japan during the last three years, including a project at the U.S. Marine Corps Iwakuni Air Station. The company has been fined and suspended, and has even incurred a surcharge because "they had been fined in other bid rigging cases." In fact, a current suspension is in effect until May 6, 2008.

The conduct of TOA not only would be a violation of U.S. laws and regulations regarding bid rigging, it also amounts to a false certification under FAR 52.209-5. An American contractor found guilty of similar offenses, particularly on a repeated basis, would most assuredly be suspended or debarred, and would undoubtedly be found non-responsible. This is particularly made evident by the recent issuance of FAR 52.203-13 that requires a contractor Code of Business Ethics and Conduct and that places great emphasis on avoiding the very sort of misconduct that the TOA Corporation has recently been implicated.

In addition, any American contractor who participated in bid rigging, bribery, or fraud in dealing with a foreign government would be found guilty of violating the Foreign Corrupt Practices Act and would face criminal and civil prosecution. TOA Corporation's bid rigging conviction in Japan cannot be ignored.

The question that we would like the Navy to consider is whether any less should be expected, in terms of business integrity, of the actions of a foreign contractor than would be expected of an American contractor doing business in Guam? In this regard, we invite your attention to the Excluded Parties List that lists foreign companies who have been suspended and debarred from contracting with the United States.

It is our opinion that an American contractor who either revealed, or failed to disclose, conduct of a nature similar to that exhibited by the TOA Corporation during the last three years, whether individually or as part of a joint venture, would not have been found eligible to receive the Kilo Wharf contract.

We have also discovered that International Bridge Corporation has not been forthright with regard to its corporate status. The Secretary of the State of Ohio certified, on January 4, 2007, that IBC "failed to file the necessary corporate franchise tax reports or pay any such taxes within the time prescribed by law." As a result, IBC's Articles of Incorporation/Certificate of Authority were cancelled. IBC was therefore not a legally authorized corporation at the time that the IBC/TOA Corporation joint venture was submitted. In fact IBC's corporate status was not reinstated until February 12, 2008.

The cumulative import of this information leads to the conclusion that both the TOA Corporation and IBC have not been forthright in their disclosures to the Navy. Our assumption is that the Navy was not aware of this information at the time of the award of

the contract. We suspect that had the Navy known about these issues, TOA Corporation's bid rigging and IBC not being a legally authorized corporation, it could not and would not have awarded the Kilo Wharf contract to IBC/TOA Corporation.

Whether the misconduct occurred in Japan or the United States, it means the same thing in terms of assessing the integrity of the TOA Corporation and IBC. We respectfully request that the award to IBC/TOA Corporation should be terminated and that appropriate action be taken to protect the interests of the United States.

11/14/07 JIJI Press Eng. News Serv. (Pg. Unavail. Online)
2007 WLNR 22551570

JIJI
Copyright 2007 Jiji Press Ltd, Source: The Financial Times Limited

**November 14, 2007**

Japan FTC Fines 14 Contractors 1.9 B. Yen for **Bid - Rigging**

Tokyo, Nov. 14 (Jiji Press)--Japan's Fair Trade Commission on Wednesday ordered 14 general contractors to pay fines totaling 1.92 billion yen for rigging bids on a subway extension project in the central Japan city of Nagoya.

The FTC confirmed that the **bid - rigging** involved a total of 33 general contractors from across Japan and ordered all of them to halt the illegal practice and devise measures to prevent any repetition of such acts.

The 33 firms, led by an Obayashi Corp. adviser who has been ruled guilty of the **bid-rigging**, conspired to prefix the winners of the project in December 2005, the FTC said.

Of the 33 firms, 14 that won orders were fined. Among them, Shimizu Corp. , Kajima Corp. , Tekken Corp. , **Toa** Corp. and Zenitaka Corp. were instructed to pay at a rate 50 pct higher than others because they had been fined in other **bid-rigging** cases, including one in Niigata.

Hazama Corp. was exempted from the fines as the company voluntarily admitted its act of **bid-rigging** before the FTC launched its investigation into the Nagoya subway case. But the company received an order to halt any **bid-rigging** practices.

---- INDEX REFERENCES ----

COMPANY: TOA CORP; TEKKEN CORP; HAZAMA CORP; ZENITAKA CORP; HAZAMA CORP (OLD); OBAYASHI CORP; SHIMIZU CORP; KAJIMA CORP

REGION: (Japan (1JA96); Far East (1FA27); Asia (1AS61); Eastern Asia (1EA61))

Language: EN

OTHER INDEXING: (FAIR TRADE COMMISSION; HAZAMA CORP; KAJIMA CORP; OBAYASHI CORP; SHIMIZU CORP; TEKKEN CORP; **TOA** CORP; TOKYO; ZENITAKA CORP) (14; 14 (Jiji Press) (Asia; Japan)

KEYWORDS: (Company News); (Crimes); (General News); (Regulation of Business)

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

8/16/07 JIJI Press Eng. News Serv. (Pg. Unavail. Online)
2007 WLNR 15905328

JIJI

Copyright 2007 Jiji Press Ltd, Source: The Financial Times Limited

**August 16, 2007**

FTC to Order 14 Firms to Pay 2 B. Yen for Nagoya Subway **Bid - Rigging**

Nagoya, Aug. 16 (Jiji Press)--Japan's Fair Trade Commission will order 14 general contractors, including Obayashi Corp. and Kajima Corp. , to pay surcharges totaling more than 2 billion yen for rigging bids for a subway extension project in Nagoya, central Japan, it was learned Thursday.

The bidding for the project in question was held in February and June 2006. The 14 firms won the order for a total of 19.2 billion yen.

The FTC usually imposes surcharges equivalent in amount to 10 pct of sales generated as a result of illegal practices, including **bid-rigging**.

But five firms, including Kajima, Shimizu Corp. and **Toa** Corp. , are expected to face 15 pct surcharges, as they were involved in other **bid-rigging** cases, informed sources said.

In the case, public prosecutors in March indicted officials of Obayashi, Kajima, Shimizu, Okumura Corp. and Maeda Corp. for rigging the bid in violation of the Antimonopoly Law.

---- INDEX REFERENCES ----

COMPANY: MAEDA CORP; TOA CORP; OKUMURA CORP; OBAYASHI CORP; SHIMIZU CORP; KAJIMA CORP

NEWS SUBJECT: (Business Management (1BU42); Contracts & Orders (1CO29); Sales & Marketing (1MA51))

REGION: (Japan (1JA96); Far East (1FA27); Asia (1AS61); Eastern Asia (1EA61))

Language: EN

OTHER INDEXING: (ANTIMONOPOLY LAW; FTC; KAJIMA; KAJIMA CORP; MAEDA CORP; OBAYASHI; OBAYASHI CORP; OKUMURA CORP; SHIMIZU; SHIMIZU CORP; **TOA** CORP) (16 (Jiji Press) (Asia; Japan)

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

5/16/06 JIJI Press Eng. News Serv. (Pg. Unavail. Online)
2006 WLNR 8424743

JIJI
Copyright 2006 Jiji Press Ltd.

**May 16, 2006**

Japan FTC Raids Kajima, Other Contractors over **Bid - Rigging**

Tokyo, May 16 (Jiji Press)--Japan's Fair Trade Commission on Tuesday raided some 10 contractors, including Kajima Corp. , over their alleged **bid - rigging** in projects ordered by the Defense Facilities Administration Agency.

Other companies raided by the antimonopoly watchdog for their alleged Antimonopoly Law violation include Taisei Corp. , Kajima Corp. , **Toa** Corp. , Tekken Corp. , Obayashi Corp. , Penta-Ocean Construction Co. and Nissan Rinkai Construction Co.

The FTC's action came on the heels of allegations that those companies rigged bids for engineering and construction works at a U.S. military base in Iwakuni, Yamaguchi Prefecture, western Japan, and another in Sasebo in the southwestern prefecture of Nagasaki, in conspiracy with officials of the Defense Facilities Administration Agency.

The contractors are also believed to have prearranged successful bids and winners for such projects as the construction of a Defense Agency building in central Tokyo.

Three high-ranking officials of the Defense Facilities Administration Agency were arrested in January on suspicion of colluding with private-sector contractors in **bid-rigging** for air conditioning works at the Defense Agency building a Defense Agency hospital in Tokyo.

They were served with another arrest warrant in February over their suspected roles in the **bid-rigging** for the engineering and construction projects at the two U.S. bases.

---- INDEX REFERENCES ----

COMPANY: TOA CORP; TEKKEN CORP; OBAYASHI CORP; TAISEI CORP; KAJIMA CORP; PENTA OCEAN CONSTRUCTION CO LTD

INDUSTRY: (Construction (1CO11))

REGION: (Japan (1JA96); Far East (1FA27); Asia (1AS61); Eastern Asia (1EA61))

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2/21/06 JIJI Press Eng. News Serv. (Pg. Unavail. Online)
2006 WLNR 3008498

JIJI
Copyright 2006 Jiji Press Ltd.

**February 21, 2006**

Japan Defense Officials Rearrested over **Bid - Rigging**

Tokyo, Feb. 21 (Jiji Press)--Japanese prosecutors on Tuesday rearrested three former senior officials of the Defense Facilities Administration Agency on suspicion of rigging bids for the construction of U.S. military facilities in Japan.

The Tokyo District Public Prosecutors Office rearrested Mamoru Ikezawa, 57, and Takayoshi Kawano, 57, technical councilors at the agency, and Takashige Matsuda, 53, a former facilities investigation officer from the agency's General Affairs Department. They allegedly helped joint ventures led by Kajima Corp. , **Toa** Corp. and Tekken Corp. to each win three contracts between January and March 2004 in the relocation of a runway at the U.S. base in Iwakuni, Yamaguchi Prefecture, western Japan.

The three also helped joint ventures led by Penta-Ocean Construction Co. and Nissan Rinkai Construction Co. to win contracts in March 2004 to reinforce the quay at the U.S. base in Sasebo, Nagasaki Prefecture, southwestern Japan, according to sources familiar with the investigation.

The construction projects were ordered by the Defense Facilities Administration Agency. The three have apparently acknowledged the allegations are true.

They were arrested last month on suspicion of rigging bids for the installation of air-conditioning systems at a Ground Self-Defense Force hospital and the Defense Agency headquarters, both located in Tokyo. The bidding took place in November 2004 and March 2005.

---- INDEX REFERENCES ----

COMPANY: TOA CORP; TEKKEN CORP; KAJIMA CORP

REGION: (USA (1US73); Americas (1AM92); Japan (1JA96); North America (1NO39); Far East (1FA27); Asia (1AS61); Eastern Asia (1EA61))

Language: EN

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# Cease and Desist Order and Surcharge Payment Order Against Corporate Bidders for the Subway Construction Project Commissioned by the City of Nagoya

November 14, 2007
Japan Fair Trade Commission

The Japan Fair Trade Commission (JFTC), in accordance with the provisions of the Antimonopoly Act (AMA), investigated the corporate bidders for the Subway Line No. 6 Extension Project (Note 1) commissioned by the City of Nagoya and found that they had committed an act in violation of the provision in Article 3 (Prohibition of Unreasonable Restraint of Trade) of the AMA. Accordingly, on November 12, 2007, the JFTC issued against them a cease and desist order pursuant to the provision in Paragraph 2, Article 7 of the AMA and a surcharge payment order pursuant to the provision in Paragraph 1, Article 7-2 of the AMA as detailed below.

(Note 1) Refers to a set of civil engineering construction connected with the project for the extension of the Nonami-Tokushige section of the High Speed Railway Line No. 6 ordered by way of general competitive bidding.

1. The numbers of corporations involved in violation and corporations subject to the cease and desist order and to the surcharge payment order, and the amount of the surcharge.

| Number of corporations in violation | Number of corporations subject to the cease and desist order | Number of corporations subject to the surcharge payment order | Amount of surcharge (Note 2) |
|---|---|---|---|
| 33 | 33 | 14 | 1,920,300,000 yen |

(Note 2) In accordance with the provision in Paragraph 6, Article 7-2 of the Antimonopoly Act, the calculation ratio of 15% was applied to those corporations subject to the surcharge payment order which have faced a previous surcharge payment order within ten years before the date of commencement of the investigation. (This applies only to cases in which the previous surcharge payment order has been settled.) For those corporations subject to the surcharge payment order, which have been convicted of unreasonable restraint of trade and have faced a pecuniary punishment in a final court decision in a case similar to the violation stated in 2 below, the surcharge is set at the amount calculated by subtracting a half of the fine, in accordance with the provision in Article 14 of the AMA.

2. Outline of the violation

During the period from early December to mid-December 2005, the 33 corporations, through communication from an Obayashi Corporation advisor or other personnel (Note 3), or through consultation (Note 4) with the advisor concerning a predetermined winner of bid, agreed that a predetermined winner of bid for the project of the Subway Line No. 6 Extension Project procured by the City of Nagoya be designated as a predetermined winner of bid and that the other corporate bidders cooperate to ensure that the predetermined winner of bid be able to receive the order. Such a conduct, contrary to the public interest, substantially restrained competition in the field of trade for the Subway Line No. 6 Extension Project ordered by the City of Nagoya.

(Note 3) Refers to the former advisor to the Nagoya Branch of Obayashi Corporation and sales personnel of this branch.
(Note 4) Refers, for example, to a statement of aspiration to receive an order placed by the City of Nagoya in connection with the Subway Line No. 6 Extension Project.

3. Outline of the cease and desist order

(1) Respective boards of directors of the 33 corporations shall adopt a resolution to confirm that the agreement mentioned in 2 above has ceased to exist and to ensure that they never engage in similar conduct to that described in 2 above, voluntarily and separately acting to win bids in the future.

(2) Each of the 33 corporations shall make notification of the measures taken in accordance with (1) above to the City of Nagoya as well as to the other 32 corporations. In addition, it shall make them fully understood by its employees.

(3) The 33 corporations, among themselves or in collaboration with any other entrepreneur, shall not determine a predetermined winner of any bid to be placed by the City of Nagoya for a set of civil engineering construction concerning the high-speed railway project in the future.

(4) Morimoto Corporation, Takenaka Civil Engineering & Construction Co., Ltd. and Meiko Construction Co., Ltd. shall each take necessary actions to implement what is described from a. to d. below, whereas the other 30 corporations shall each take measures necessary to implement what is specified in b. below.

a. Formulation or revision of action guidelines on receipt of orders from the public sector for compliance with the AMA;

b. Regular training for relevant sales personnel on compliance with the AMA regarding the receipt of orders for sets of civil engineering construction procured by the City of Nagoya as well as periodical audits performed by legal affairs personnel;

c. Development or revision of regulations on disciplinary action against officers and employees involved in any violation of the AMA;

d. Establishment or revision of effective internal notification or investigation systems, including indemnification, etc. for those reporting any violation of the AMA and those subject to internal investigations.

4. Due date of surcharge payment

February 13, 2008

◆ Application of the leniency program

- In this case, one enterprise was granted immunity from surcharge payment.

The JFTC decided to take a policy that it would publish at the JFTC's website (http://www.jftc.go.jp/dk/genmen/kouhyou.html) names, places of head offices and representative directors of enterprises that were granted lenient treatment, along with information on immunity from or percentage of deduction of surcharge applied for each applicant in accordance with the leniency program, if such enterprises asks the JFTC to publish them.

The reason why the JFTC has decided to reveal them based on such a request is that public entities, including the Ministry of Land, Infrastructure and Transport, made it clear that such enterprises could enjoy advantages that a period of debarment from participation in bids for public works would be significantly shortened, and so on.