IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WATTS-HEALY TIBBITS A JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant.<br>and<br>IBC/TOA CORPORATION<br>Defendant-Intervenor | No. 08-261C<br>(Senior Judge Smith) |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

## I. INTRODUCTION

On May 5, 2008, plaintiff filed a motion for reconsideration and a second motion for injunctive relief on "new" grounds. The Court subsequently denied the motion for reconsideration and ordered briefing on two issues related to plaintiff's second motion for injunctive relief: 1) that there was no "American" member of the joint venture because IBC's corporate status in Ohio had temporarily lapsed; and 2) the protester's allegations related to TOA Corporation's violation of the Anti-Monopoly Act in Japan, as well as the effect thereof on its certification pursuant to FAR 52.209-5. As demonstrated below, the grounds for plaintiff's second request for injunctive relief are not "new." More importantly, they are completely without merit.

## II. STANDARD OF REVIEW

A bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324,

1332 (Fed.Cir.2001) (citations omitted). When a challenge is brought on the first ground, the courts have recognized that contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process. *Latecoere Int'l, Inc. v. United States Dept. of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994). Accordingly, the test for the reviewing court is to determine whether the contracting officer provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. *Saratoga Dev. Corp. v. United States*, 21 F.3d. 445, 456 (D.C. Cir. 1994). When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations. *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973).

## III. ARGUMENT

### A. Ohio Corporate Status

As explained in the attached declaration of Robert W. Toelkes (Enclosure 1), IBC is a corporation duly licensed to conduct business in Guam, which is of course a U.S. Territory. IBC was originally incorporated in Ohio. Because it no longer conducts any business in Ohio it does not pay taxes there. It continues to maintain its corporate status in Ohio by filing a franchise fee every year. That fee is now $25.00. In 2007 the fee amount remitted by IBC was incorrect so, unbeknownst to IBC, its corporate status in Ohio was not renewed. IBC did not receive notice of this, and was not aware of the lapse until it was brought to its attention by the Navy in December, 2007. Apparently the Ohio Secretary of State failed to mail out over 50,000 non-renewal notices. IBC promptly rectified the situation and its status as an Ohio corporation was renewed.

Watts asserts that because IBC's corporate status in Ohio had temporarily lapsed the contracting officer's determination that IBC qualified as an American firm for purposes of the American Preference Policy was arbitrary and capricious. Plaintiff cites no authority for this

proposition, and there is no basis in the appropriations act or the regulation that would suggest that a contracting officer should apply the "incorporated in the United States" language in DFARS 252.236-7010(a) in such a way as to exclude IBC from the definition of a United States firm.[1] The contracting officer reviewed the facts and circumstances surrounding the temporary lapse of the Ohio corporate status and concluded that IBC qualified as an American firm. This determination is within the contracting officer's wide discretion. *Impresa* at 1333. Defendant-intervenor is aware of no authority that would suggest that the contracting officer, in reviewing the facts surrounding this situation, reached an arbitrary determination regarding the import of the temporary (and ministerial) lapse of IBC's Ohio license. Quite the contrary – had the contracting officer reached the opposite conclusion there would be a far more compelling argument that his determination was arbitrary.

Watts raises this issue in the context of suggesting that the IBC/TOA joint venture is a "sham" and that it should not be countenanced because bogus companies could masquerade as a front for foreign corporations bidding on government work. Watts' statements disparaging IBC in this regard constitute libelous and actionable defamation of business reputation. Watts offers absolutely no support whatsoever for these allegations, and yet comes into this Court asking for the extraordinary relief of an injunction based upon its completely fabricated allegations. As the Navy correctly determined, and as Watts is no doubt aware, IBC has been contracting for the Navy on large construction projects on Guam for many years and has resources and equipment available locally for the Kilo Wharf project.

As we amply demonstrated in our opening brief, IBC meets the DFARS requirement regarding a "United States firm:" it is incorporated and licensed in the United States, its

[1] The protester also asserts that IBC was not a "United States firm" because its CCR registration was not current at the time of submission of offers. CCR registration is required for bidders or offerors. The offeror in this case – IBC/TOA – was registered in the CCR. There is no legal requirement that the individual members of a joint venture have to be registered in the CCR in order for the joint venture to be qualified for award, let alone to be considered a "United States firm." This is another unsupported legal allegation by the protester that has no merit.

corporate headquarters are in the United States, it files U.S. tax returns, and its key management personnel are United States citizens. It would have been arbitrary and capricious for the contracting officer to conclude that IBC was not a "United States firm" because its Ohio license inadvertently lapsed for a short period of time. Watts' attempt to elevate form over substance -- in this case elevating a ministerial technicality that has no substantive effect over the decades long corporate and licensure status of IBC – is frivolous. The contracting officer's decision had a rational basis, and he did not violate any applicable regulations. For the protester to suggest that Congress intended, in enacting the American Preference Policy, to create a definition that would exclude IBC from qualifying as a "United States firm" defies credulity, and is wholly without support.

**B. TOA Has Remedied Its Past Violations Of The Japanese Anti-Monopoly Act And Satisfies Applicable FAR Provisions**

The protester asserts that IBC/TOA should be determined non-responsible because it does not have "a satisfactory record of integrity and business ethics." 48 C.F.R. Sec. 9.104-1(d). As demonstrated below and in the facts set forth in the declaration of Atsushi Ando, TOA Corporation (Enclosure 2), TOA meets the guidelines set forth in FAR 9.406-1 and is therefore a "responsible" contractor.

Mr. Ando's declaration fully sets forth the circumstances surrounding the Japanese Fair Trade Commissions ("JFTC") findings regarding TOA's past violations of the Japanese Anti-Monopoly Act ("AMA"). In sum, Japanese construction companies performing public construction jobs in Japan historically communicated with one another regarding the bids they would submit in an attempt to predetermine which company would be awarded a particular contract. Japanese governmental agencies participated in this activity, which became illegal under the AMA. Over one hundred Japanese construction firms were cited by the JFTC for this activity. TOA has taken extensive remedial measures, starting at the very top with the Board of Directors and the President and flowing to every concerned employee.

As Mr. Ando explains in his declaration, TOA was twice cited for the type of

violations of the AMA discussed above. One was related to the Nagoya subway (in 2005), and the other to a Japanese Defense Facilities Administration Agency ("DFAA") contract (in 2004). Both of these contracts were public Japanese contracts performed in Japan. TOA's fines in those two instances were less than five percent of the total fines levied, and it was not identified as one of the primary targets. Encl. 2 at para. 3, attachment 11. On the DFAA contract violation, TOA was suspended for one month in the geographical prefecture at issue. No further cases have been issued against TOA since the 2005 incident. None of the incidents involved the International Division of TOA, which is the division performing this contract and which operates separately from the domestic division.

At the time of the violations, TOA had a policy in place requiring all employees to comply with applicable laws. In response to the aforementioned violations, the TOA Board of Directors and President implemented extensive and effective measures to ensure no further violations occurred. It replaced the Anti-Monopoly Act Committee with a new Compliance Committee (with the TOA President as the Chairman), it issued updated Corporate Activity Guidelines that were posted to its internal website, it submitted preventive measures to the JFTC that were approved by the JFTC, it issued notices to employees regarding the past violations and again specifically ordered them to comply with the AMA, it required a written oath of all of its employees regarding compliance with the law, and it revised the penalty clause in its employee policy to require removal in the event of a violation of the AMA or other laws.

All of these actions are commensurate with FAR 9.406-1. The Federal Circuit discussed the appropriateness of using this FAR provision regarding debarment proceedings in this type of situation. *Impresa* at 1334 (citing *Trilon Educ. Corp. v. United States*, 578 F.2d 1356, 1360 (Ct. Cl. 1978)). TOA has taken steps that fully comply with the provisions in that regulation. It had standards of conduct in place at the time of the activity, it paid all of the fines levied, it took appropriate disciplinary action against a responsible employee, it

agreed to and implemented remedial measures that were approved by the JFTC, it instituted new and revised programs and procedures, it eliminated the circumstances giving rise to the activity (as evidenced by the absence of violations since 2005), and its highest management levels recognize and understand the seriousness of the conduct and have implemented programs to prevent its recurrence. *See* FAR 9.406-1.

TOA's actions in response to the violations deem it presently responsible. The protester's assertion that TOA does not meet the requirements to be determined presently responsible are without merit, and its allegation that the past acts of TOA should be imputed to IBC are also without merit. FAR 9.406-5(c) states that the improper conduct of one member of a joint venture *may* be imputed to another member of the joint venture if the conduct occurred with the knowledge, approval, or acquiescence of the other joint venture member. Because IBC was not aware of these violations until they were raised by the protester during this litigation, TOA's past acts cannot be imputed to IBC under the regulation. *See* Encl. 1. Even had IBC been aware of the violations, the contracting officer has the discretion not to impute TOA's past actions to IBC. Furthermore, imputation is certainly not *required* by the regulation even when the circumstances described in the regulation exist. *Impresa* at 1335 (citing *Trilon*, 578 F.2d at 1359).

As discussed above, it is undisputed that contracting officers are generally given wide discretion in making responsibility determinations, and in determining the amount of information that is required to make a responsibility determination. *Impresa* at 1334-35 (citing *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999)). The evidence submitted by defendant-intervenor demonstrates that an affirmative responsibility determination is warranted for IBC/TOA. Balancing the seriousness of TOA's infractions against the remedial measures and mitigating factors, a finding of non-responsibility of the joint venture is not warranted. Accordingly, the protester has no likelihood of success on the merits.

## C. TOA's Certification Pursuant To DFARS 52.209-5 Is Accurate

TOA properly certified that it not been convicted of or had a civil judgment rendered against it for the "commission of fraud or a criminal offense in obtaining, attempting to obtain, or performing a public (*Federal, state, or local*) contract or subcontract." FAR 52.209-5(B) (emphasis added). The comments to this provision make it absolutely clear that it was not intended to require certification regarding foreign contracts:

> Other commenters raised the concern that the proposed certification, by focusing on violations of Federal law, could harm U.S.-based firms, as opposed to foreign-based firms. In response to these comments, it is helpful to distinguish between the standard that is set forth in FAR 9.104-1(d) and 9.104-3(c), and the implementing certification that has been added to FAR Part 52. Under the standard in FAR 9.104, the contracting officer "must consider all relevant credible information" regarding the prospective contractor's compliance with laws (the proposal stated that the contracting officer "may consider" such information; in response to comments, this was made mandatory rather than permissive). Although the final rule establishes a hierarchy of violations of law, some of which are also referenced in the certification, the contracting officer is not limited to considering only the listed violations. Again, the contracting officer "must consider all relevant credible information," and such information relates to the prospective contractor's record of compliance with laws and regulations. The FAR Council expects that, as a practical matter, such information will generally pertain to compliance with Federal and State laws, but a prospective contractor's record of compliance with foreign laws and regulations can also constitute "relevant credible information."
>
> *The final certification that has been added to Part 52, however, is not as broad as the standard in FAR 9.104.* The certification is an implementation measure, designed to provide the contracting officer with the information that the FAR Council anticipates will be most useful in making the responsibility determination (e.g., felony convictions and indictments), while at the same time avoiding the imposition of undue reporting burdens on prospective contractors. In response to comments, the final certification has been broadened to include violations of State felony law as well as Federal law. In both cases, the certification focuses on cases that have been brought by governmental authorities. *The final certification, however, has not been broadened to include* ... *violations of foreign law*. ... The fact that ... violations of foreign law have been not included in the final certification, however, does not mean that they cannot be taken into the contracting officer's consideration in making the responsibility determination; to the extent that

> the contracting officer becomes aware of such cases, and they constitute "relevant credible information," the contracting officer must consider them in making the responsibility determination.

65 Fed. Reg. 80256, 80260 (Dec. 20, 2000) (emphasis added).

As clearly enunciated by the FAR Council, TOA's certification is accurate. The two violations that occurred did not involve Federal, state, or local contracts within the meaning of the certification. Hence, the protester's assertion that TOA submitted a "false certification" under the regulation is completely baseless. We are constrained to comment that it would be appropriate under the Rules for a party, when reviewing a certification that plainly states "Federal, state, or local" to check the meaning of that limitation prior to submitting such inflammatory and baseless allegations to a Federal court, particularly when the allegation is the basis for a request for the extraordinary relief of an injunction in a bid protest case.

**D. TOA's Second Protest Should Be Barred**

As this Court made clear in *Precision Standard, Inc. v. United States*, 71 Fed. Cl. 216 (2006), a plaintiff in a bid protest case should assert arguments available to it prior to the Court's issuance of its opinion. *Precision Standard* involved new arguments raised by the protester in a request for reconsideration. The circumstances in that case were somewhat different than here, as at the time of the reconsideration request the protest had continued for some time and an administrative record had been filed. Nonetheless, the reasoning set forth in that decision is applicable here, just as the reasoning set forth in *Blue & Gold* was applicable to plaintiff's initial protest. Plaintiff, having the information presented in its new protest available to it *before* the first oral argument in this case, nonetheless waited to see whether it would prevail on its American Preference Policy argument before asserting its other grounds for protest.[2] Likewise, plaintiff waited to see the outcome of the procurement

[2] Protester's counsel made the arguments regarding IBC's Ohio corporate status at oral argument on its original motion, and was aware of its TOA allegations prior to the argument. In a teleconference with the Court after it filed its second motion, protester's counsel asserted that he could not make the allegations regarding TOA previously because he did not want to make such serious allegations without adequate back-up and that he had

rather than requesting clarification of the application of the American Preference Policy. Protester's actions thus far have unnecessarily consumed significant time and resources of this Court and of the parties. In the future, it should be required to set forth grounds known to it in a timely manner and be forthcoming with the Court.

Dated: May 20, 2008

Respectfully submitted,

s/S. Lane Tucker by s/Jay L. Griffiths
S. Lane Tucker
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, AK 99501-1970
(907) 263-6927

Attorneys for Defendant-Intervenor
IBC/TOA CORPORATION

Of Counsel:
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

to have documents translated from Japanese. None of the documents submitted by plaintiff are translated from Japanese; they are available in English on the Japanese Fair Trade Commission website. Furthermore, virtually all of the libelous allegations regarding IBC in the second protest are completely without any factual basis. Hence, plaintiff's counsel's explanation as to the reason for plaintiff's delay is, with all due respect, not credible.

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that, on May 20, 2008, I caused a copy of the foregoing "Defendant-Intervenor's Response To Plaintiff's Second Motion For Preliminary Injunctive Relief" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Jay L. Griffiths
Jay L. Griffiths