**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WATTS-HEALY TIBBITS A JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant.<br>and<br>IBC/TOA CORPORATION<br>Defendant-Intervenor | No. 08-261C<br><br>(Senior Judge Smith) |

**DEFENDANT-INTERVENOR'S UNOPPOSED MOTION FOR LEAVE TO SUBSTITUTE TRANSLATED AND RE-FORMATTED DECLARATION ATTACHMENTS TO DEFENDANT-INTERVENOR'S MAY 20, 2008, BRIEF**

Defendant-Intervenor respectfully requests that it be permitted to substitute new Attachments 1, 2, 4, 5, 6, 7 and 10 for the original attachments to the declaration of Atsushi Ando, which was submitted with Defendant-Intervenor's Response to Plaintiff's Second Motion For Preliminary Injunctive Relief. Counsel for plaintiff and defendant have represented that they have no objection to this motion.

The original Attachment 1 was in Japanese. The new Attachment 1 is a translation of that document. Exhibits 2, 4 through 7, and 10 were improperly formatted and therefore very difficult to read. Properly formatted documents are now available. Substitution of these documents for those originally submitted will allow for ease of review and benefit the Court and the parties' consideration of these materials.

Dated: June 6, 2008

Respectfully submitted,

s/ S. Lane Tucker by s/Emily C.C. Poulin
S. Lane Tucker
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, AK 99501-1970
(907) 279-8561

Counsel to
IBC/TOA CORPORATION

Of Counsel:

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on June 6, 2008, I caused a copy of Defendant-Intervenor's foregoing Unopposed Motion For Leave To Substitute Translated And Re-Formatted Declaration Attachments To Defendant-Intervenor's May 20, 2008, Brief to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ Emily C.C. Poulin
Emily C.C. Poulin

# ATTACHMENT 1

[Translation]

# Compliance Committee Regulations

Article 1 (Purpose)

The purpose of these Regulations is to promote the Company's lawful business operation and healthy development.

Article 2 (Establishment)

(1) A compliance committee (hereinafter referred to as the "Committee") is established whose mission is to achieve the purpose set forth in Article 1.

(2) The Committee is placed under the direct supervision of the President.

Article 3 (Duties and Responsibilities)

The Committee is engaged in the duties and responsibilities listed below in order to achieve the purpose set forth in Paragraph 1 of the preceding Article:

1 Matters concerning planning and drafting with respect to compliance

2 Enlightenment, education, guidance and monitoring with respect to compliance

3 Consultation with respect to laws and regulations

4 Monitoring of sales and marketing activities

5 Examination of enrollment in business associations or social associations and activities thereof

6 Matters incidental to each of the foregoing items

Article 4 (Organization and Structure)

(1) The Committee consists of the Chairman, the Vice Chairman and five members.

(2) The Director in charge of general affairs serves as the Chairman.

(3) The General Affairs Department Manager serves as the Vice Chairman.

(4) The Civil Engineering Business Planning Office Manager, the Construction Planning Office Manager, the Human Resources Department Manager, the Tokyo Branch General

Affairs Department Manager and the Yokohama Branch General Affairs Department Managers serve as the members of the Committee.

Article 5 (Term)

The terms of the Chairman, the Vice Chairman and the committee members shall be the same as the terms of their respective positions, and, in the event of any change thereof, their respective successors shall succeed.

Article 6 (Chairman)

(1) The Director in charge of general affairs serves as the Chairman, who supervises the duties and responsibilities of the Committee and represents the Committee.

(2) The Vice Chairman acts as the Chairman in the event of his absence.

Article 7 (Proceedings)

(1) The Committee is convened by the Chairman or the Vice Chairman. The Committee may not proceed to any voting action unless the Chairman or the Vice Chairman and three or more committee members are in attendance.

(2) Actions of the Committee are decided by the affirmative vote of a majority of the committee members in attendance. The Chairman makes a decision in the event of a tie.

Article 8 (Organization of the Secretariat)

(1) A secretariat is established in the General Affairs Department Legal Section to conduct clerical work for the Committee.

(2) The Secretariat of the Committee consists of such individuals as may be appointed from time to time in addition to the General Affairs Department Legal Section personnel.

Supplementary Provisions

The Regulations shall be effective as of April 1, 2005.

# ATTACHMENT 2

[Draft translation]

Minutes of the Board of Directors Meeting

A Board of Directors meeting was held in this company's head office conference room at 5-banchi, Yonban-cho, Chiyoda-ku, Tokyo-to, at 1:00 p.m. on May 23, 2006 (Tuesday). At the scheduled time, Representative Director & Chairman Masao Watanabe took the chairman's seat, called the meeting to order, reported on the Directors and Statutory Auditors in attendance as follows, and declared that the Board of Directors meeting was lawfully convened.

| | |
|---|---|
| Total number of Directors: 10 | Directors in attendance: 10 |
| Total number of Statutory Auditors: 4 | Statutory Auditors in attendance: 4 |

Items for Actions:

Agenda Item No. 4: Approval of Internal Control System Basic Policy and Corporate Activity Guidelines

The chairman of the meeting stated that a basic policy should be established for the institution of internal control systems pursuant to the provisions of the Corporation Act enacted on May 1, 2006, and the enforcement regulations thereof, which require boards of directors to pass resolutions on basic policies on the maintenance of systems that ensure appropriate business activities of corporations, and that corporate activity guidelines should be established based on the said basic policy, as detailed in the attachments, and submitted the agenda item to the floor for approval, which was then unanimously approved and voted for without objection by all in attendance.

Upon completion of the deliberation of all the agenda items for this meeting, the chairman of the meeting declared adjournment at 1:50 p.m.

In order to expressly record the proceedings and conclusions of the deliberation of the agenda items, these minutes were prepared, and the chairman of the meeting and all the Directors and Statutory Auditors in attendance wrote their respective names and affixed their respective chops below.

May 23, 2006

Toa Kensetsu Kogyo Company, Ltd.

Chairman of the Meeting:

Representative Director & Chairman of the Board Masao Watanabe

| | |
|---|---|
| Representative Director & President | Yukio Suzuki |
| Representative Director | Hiroshi Shirasu |
| Representative Director | Hideaki Kimoto |
| Representative Director | Hiroshi Oya[Otani?] |
| Director | Koji Ogawa |
| Director | Keiji Yoshikura |
| Director | Hideki Akiyama |
| Director | Himihiko Uemura |
| Director | Kiichi[Motokazu?] Kobayashi |
| Full time Statutory Auditor | Shuji Kubo |
| Statutory Auditor | Hirotoshi Furuya |
| Statutory Auditor | Minoru Oka |
| Statutory Auditor | Tomohisa Uno |

It is hereby certified that this is a true copy of the original minutes.

May 20, 2008

Yukio Suzuki [seal]

Representative Director & President

Toa Kensetsu Kogyo Company, Ltd.

[Draft translation]

Agenda Item No. *4*

*1/5*

Reference material for the Board of Directors May 23, 2006

Basic Policy on the Institution of Internal Control Systems (Draft)

Pursuant to the Corporation Act and its enforcement regulations, this Company will provide systems that ensure the appropriateness of this Company's business operations (hereinafter referred to as the "Internal Control Systems") as follows:

1. A system that ensures that Directors and employees execute their duties and responsibilities in conformity with the law and the regulations and the Articles of Incorporation (Law 362-4-6 and Regulations 100-1-4):

1) In order to fulfill social responsibilities as a corporation, corporate activity guidelines will be established so that executive and managerial personnel will execute their duties and responsibilities in compliance with the law and the regulations, the Articles of Incorporation and corporate ethics.

2) That the compliance with the law, the regulations, etc. is a prerequisite to any and all the corporate activities will be communicated through and through by way of the Representative Director & President repeatedly informing all the executive and managerial personnel of the spirit of the corporate activity guidelines.

3) A compliance committee will be established as an organ under the direct control of the Representative Director & President. The Compliance Committee will draw up compliance programs periodically and will implement the same.

4) A Director in charge of compliance will be appointed, and, under his command and directions, the General Affairs Department, the compliance supervision arm, will make efforts to maintain the across-the-company compliance system and to identify and solve problems.

2. A system concerning the preservation and management of the information on the execution of duties and responsibilities by Directors (Regulations 100-1-1):

1) Information concerning Directors' execution of their duties and responsibilities (Minutes of the Board of Directors, *Ringi* documents) will be recorded on paper or an electromagnetic medium and will be preserved in accordance with the Documents Management Regulations.

2) Directors and Statutory Auditors may, at any time, peruse the information concerning Directors' execution of their duties and responsibilities.

3. Regulations concerning the management of risk of loss and other systems (Regulations 100-1-2):

1) Risk management concerning the execution of duties and responsibilities will be assumed by each applicable section responsible for the same in accordance with the management regulations prescribed by that section.

2) The monitoring of cross-organizational risk statuses and corporate responses thereto will be undertaken by pertinent sections of the head office in mutual cooperation and consultation, and will be reported as needed to the Board of Directors as to each such status and the nature of each such response.

4. A system that ensures that Directors' duties and responsibilities are executed efficiently (Regulations 100-1-3):

1) Mid-term business plans and annual plans will be established to define goals for this Company to achieve and performance goals for the respective Directors in charge to accomplish.

2) The Business Planning Office will verify the execution statuses of the activities of all the sections with respect to the mid-term business plans and annual plans, provide feedback and monitor the implementation of improvement measures by all the sections.

3) A Director in charge of IR will be appointed, and corporate information, etc., will be disclosed in a timely and proper manner.

4) Through an executive officer system, the decision-making function and the execution function will be separated in an attempt to simplify the decision-making process and to expedite the decision-making process.

*2/5*

5. A system that ensures that employees execute their duties and responsibilities in conformity with the law and the regulations and the Articles of Incorporation (Regulations 100-1-4):

To be integrated into 1. [above].

6. A system that ensures the appropriateness of business activities of corporate groups consisting of corporations and their subsidiaries (Regulations 100-1-5):

1) Each of the member companies of our group will be thoroughly informed of the Corporate Activity Guidelines established by this Company, and all the executive and managerial personnel of the entire group will, in unity, attempt to heighten the sense of compliance.

2) The Director in charge of compliance will assume the responsibility for the entire group's institution of internal control systems.

3) In accordance with the affiliated companies management standards established by this Company, important matters concerning the management of each of the member companies of our group shall be submitted to the Board of Directors of this Company for deliberation, and other matters shall be reviewed by the Business Planning Office of this Company.

4) The Audit Office of this Company will conduct internal audit of each of the member companies of our group.

5) Each of the member companies of our group will establish management goals, and current term outlooks, etc., will be discussed with the management team of this Company at affiliated company presidents meetings. The Business Planning Office of this Company will periodically verify the achievement statuses of the management goals of each of the member companies of our group, report the results to the Board of Directors of this Company and provide feedback to each of the group companies.

7. A system concerning assistants whose employment is requested by statutory auditors to assist their duties and responsibilities (Regulations 100-3-1):

1) Those employees that have enough experience to sufficiently verify this Company's business activities will be positioned as such assistants, who will simultaneously serve as the secretary of the Board of Statutory Auditors.

2) Statutory Auditors may direct the assistants to conduct such matters as are necessary for audit activities.

8. Matters concerning independence of the assistants set forth in the preceding item relative to Directors (Regulations 100-3-2):

1) Transfer, performance evaluation and disciplinary actions with respect to the assistants shall be consented to by the Board of Statutory Auditors.

2) Any assistant who received any directive from any statutory Auditor that is necessary for audit activities will not be subjected to any command or direction of any Director or any other person with respect to that directive.

9. A system for Directors and employees to make reports to a Statutory Auditor and a system concerning reports to other Statutory Auditors (Regulations 100-3-3):

1) Executive and managerial personnel will promptly make a report to the Board of Statutory Auditors in the event that a situation has arisen that will cause a serious loss to the company or in the event of such threat, when illegal or unlawful conduct by executive or managerial personnel is discovered, or when any other event determined by the Board of Statutory Auditors to be reported on has occurred.

2) Statutory Auditors may attend the Board of Directors meetings and other important meetings and state their opinions when necessary, and peruse at any time important documents concerning business management, such as minutes of

the Board of Directors and *Ringi* documents, if deemed necessary for auditing purposes.

10. Any other system that ensures that audits by Statutory Auditors are conducted effectively (Regulations 100-3-4):

1) Executive and managerial personnel will recognize and understand the importance and usefulness of Statutory Auditors' audit activities and will extend cooperation so that audit s will be carried out effectively.

2) Statutory Auditors will hold regular opinion-exchange meetings with the Representative Director & President and accounting firms specialized in audits, and will attempt to coordinate closely with the Audit Office for appropriate communications and effective audit activities.

3) When necessary for auditing purposes, Statutory Auditors may arrange opportunities to separately meet with any Director and any key executive/managerial personnel.

End

[Translation]



May 23, 2006

Toa Kensetsu Kogyo Group "Corporate Activity Guidelines"

Based on our understanding that "striving for the expansion of our company business by utilizing high technology and fulfilling social responsibilities through healthy management," as set forth in our managerial creed, is our raison d'etre, this Company hereby establishes "Toa Kensetsu Kogyo Group Corporate Activity Guidelines" and communicates the same to the entire group for thorough understanding in an effort to promote CSR activities and to attain healthy and continuous expansion of our business.

1. Provision of excellent buildings and services:

    This Company makes efforts to respond to ever-diversifying customers' and society's needs and to provide buildings and services that contribute to society.

2. Thorough compliance with laws and regulations:

    This Company thoroughly complies with laws and regulations and the spirit thereof, and practices honorable and appropriate corporate activities with social sensibility.

3. Promotion of fair competition:

    This Company promotes fair and transparent competition.

4. Cutoff of relationships with anti-social powers:

    This Company cuts off any relationship with any anti-social power that threatens society's order and safety.

5. Proper disclosure of corporate information and securing of trustworthiness:

    This Company discloses corporate information in a proper and timely manner, actively seeks communications with society and makes efforts to secure society's trust in us.



6. Harmony with and contribution to local community:

    This Company balances corporate interest and society's interests and makes efforts to build and maintain a good relationship with the local community and fulfills the role of a "good corporate citizen."

7. Environmental engagement:

This Company makes efforts to attain symbiosis with the environment in all the arenas of our corporate activities and actively engages itself in the conservation and regeneration thereof.

8. Realization of comfortable work environment and richness:

This Company secures a safe and comfortable work environment, respects employees' personalities and individuality, and realizes ease and richness.

9. Harmony with and contribution to international community:

In the international community, this Company not only complies with international rules and local laws and regulations but also respects local cultures and customs and promotes business activities that contribute to the development thereof.

10. Leadership and system institution:

The Directors, officers and the managing staff of this Company understand that it is their role to put these Guidelines in practice, assume leadership and make efforts to institute and strengthen the intra-company constitution through thorough management and guidance.

End

[Translation]



4.28.2006
Reference material for the Board of Statutory Auditors

Review Items Concerning Audit Environment Improvement for Statutory Auditors (Request to Directors)

1. Matters concerning assistants who are to assist Statutory Auditors' duties and responsibilities and matters concerning the assistants' being independent of Directors:

Assistants are ideally designated for the sole purpose, but the current status of [such assistant/s] holding additional posts may have to be tolerated.

In case of [such assistant/s] holding additional posts, Statutory Auditors' consent will be needed for transfer and performance evaluation of the assistant/s.

2. System for Directors and employees to report to Statutory Auditors:

(1) Matters to be reported to Statutory Auditors regularly:

a. Management statuses of this Company and affiliated companies
b. Business activity statuses of this Company and affiliated companies
c. Financial statuses of this Company and affiliated companies
d. Results of internal auditing undertaken by internal auditing arm
e. Statuses of risks and risk management
f. Statuses of compliance

(2) Matters to be reported to Statutory Auditors as they occur:

a. Facts that are feared to cause significant loss to this Company
b. Unlawful conduct of Directors and employees in executing their duties and responsibilities and serious facts of violation of laws, regulations and the Articles of Incorporation
c. Facts that are informed based on the public-interest informant protection regulations
d. Results of investigations by enforcement agencies and of audits by external organs
e. Administrative dispositions issued by enforcement agencies, etc.
f. Significant changes in accounting principles, establishment, revision or abolishment of accounting standards, etc.
g. Announced business performance or business performance estimate and important disclosures

3. System to ensure Statutory Auditors' effective audits:

(1) Representative Directors' and others' recognition and understanding of the importance and usefulness of Statutory Auditors' auditing
(2) Close cooperation with internal audit arm, etc.
(3) Institution of internal control systems
(4) Assurance of smooth audit activities of Statutory Auditors

End

# ATTACHMENT 4

[draft translation]

[stamp: Fair Trade Commission Secretariat; Received on 8.10.07; No. ]

August 10, 2007

To: Fair Trade Commission

Address: 5-banchi, Yonban-cho, Chiyoda-ku, Tokyo-to
Company name: Toa Kensetsu Kogyo Company, Ltd.
Representative's name: Yukio Suzuki [seal]
Representative Director

Re: Application for Approval of Method of Notice, etc. and Measures to be Taken pursuant to Cease and Desist Order

We wish to implement a method of notice to the business entities that received the cease and desist order and a method of keeping our employees thoroughly informed pursuant to Paragraph 2 of the text of the Cease and Desist Order 2007 (SO) No. 11 and certain measures necessary to implement the preventive measures pursuant to Paragraph 4 of the text of the said Cease and Desist Order as follows, and your approval is hereby applied for.

1. Method of notice to the business entities that received the cease and desist order of Paragraph 2 of the text of the Cease and Desist Order 2007 (SO) No. 11:

To send a letter of notice by mail with recorded delivery to the business entities that received the cease and desist order.
The sender thereof shall be Representative Director, a draft letter is as per Exhibit 1, the addresses of the recipients are as per Exhibit 2, and the timing of the notice shall be within 15 days of your Commission's approval.

2. Method of keeping our employees thoroughly informed as per Paragraph 2 of the text of the Cease and Desist Order:

To disseminate a letter of information to the employees (1,855 individuals) of our company to keep them thoroughly informed.
The sender of the letter shall be Yukio Suzuki, Representative Director, a draft letter is as per Exhibit 3, the employees to be thoroughly informed are as per Exhibit 4, and the timing of the information shall be within 15 days of your Commission's approval.

3. Measures necessary to implement the preventive measures as per Paragraph 4 of the text of the Cease and Desist Order:

To plan and implement necessary measure as per Exhibit 5 with respect to (1) through (4):

(1) Drafting or review of conduct guidelines concerning Anti-Trust Law compliance relative to receiving orders from government or public agencies;

(2) Periodic training of the executives in charge of sales and marketing and sales and marketing managers or sales and marketing personnel for comprehensive civil engineering or building construction projects ordered by the Defense Facilities Administration Agency through its local defense facilities sub-agencies by way of competitive bidding, addressing Anti-Trust Law compliance relative to receiving orders from government or public agencies, and periodic auditing by legal personnel;

(3) Maintenance or review of company regulations on the disposition of the executives, employees, etc., who were involved in Anti-Trust Law violation;

(4) Establishment or review of intracompany reporting system and intracompany investigation system that have practical effects, such as immunity given to informers on Anti-Trust Law violations, those subjected to intracompany investigations, etc.

Attachments:

1. Draft letter of notice to be sent to the business entities that received cease and desist order (one letter): Exhibit 1
2. List of business entities to be notified: Exhibit 2
3. Draft letter of information to be disseminated to employees (Cease and Desist Order to be attached as attachment): Exhibit 3
4. List of employees to be informed: Exhibit 4
5. Draft implementation plan of preventive measures: Exhibit 5

# ATTACHMENT 5

[draft translation]

August 29, 2007

To: Employees

Company name: Toa Kensetsu Kogyo Company, Ltd.
Name of representative: Yukio Suzuki [seal]
Representative Director

Notice pursuant to Cease and Desist Order by Fair Trade Commission

Our company received a Cease and Desist Order 2007 (SO) No. 11 dated June 20, 2007, from the Fair Trade Commission stating that the conduct referred to in the said Cease and Desist Order No. 11 was in violation of the Anti-Trust Law.

Our company held a Board of Directors meeting on July 23, 2007, and confirmed and resolved the following matters. You at respective positions are hereby requested to make efforts to fully comply with the Anti-Trust Law and to exercise full precaution to prevent such violation from being committed again.

1. Our company has confirmed at the Board of Directors meeting held on July 23, 2007, that it has ceased and desisted the act of deciding, in concert with the 55 companies of the business entities listed in Schedule 1, exclusive of our company, and the 4 companies listed in Schedule 2, Schedule 3 and Schedule 4 of the Cease and Desist Order 2007 (SO) No. 11, upon the person/s who should be awarded with (hereinafter referred to as the "person/s intended for an award/s"), and assisting such person/s intended for an award/s to be actually awarded with, the construction projects ordered in 2004 and thereafter listed in the attachment to the aforementioned Cease and Desist Order.

2. Our company shall not, in the future, decide, in concert with the 54 companies of the 55 companies referred to in 1. above, exclusive of the business entity listed in Schedule 5, upon the person/s who should be awarded with any of the comprehensive civil engineering or building construction projects (including those to be ordered in the name of the Ministry of Defense upon the abolishment of the Defense Facilities Administration Agency) ordered by the Defense Facilities Administration Agency through its local defense facilities sub-agencies (including their defense facilities branch offices) by way of competitive bidding, and, shall, instead, independently engage in order receiving activities.

Attachment:
- Cease and Desist Order (2007 (SO) No. 11)

# ATTACHMENT 6

[draft translation]

[stamp: Fair Trade Commission Secretariat; Received on 1.18.2008; No. ]

January 18, 2008

To: Fair Trade Commission

Address: 5-banchi, Yonban-cho, Chiyoda-ku, Tokyo-to
Company name: Toa Kensetsu Kogyo Company, Ltd.
Representative's name: Yukio Suzuki [seal]
Representative Director

Re: Application for Approval of Method of Notice, etc. and Measures to be Taken pursuant to Cease and Desist Order

We wish to implement a method of notice to the business entities that received the cease and desist order and to the City of Nagoya and a method of keeping our employees thoroughly informed pursuant to Paragraph 2 of the text of the Cease and Desist Order 2007 (SO) No. 15 and certain measures necessary to implement the preventive measures pursuant to Paragraph 4 of the text of the said Cease and Desist Order as follows, and your approval is hereby applied for.

1. Method of notice to the business entities that received the cease and desist order of Paragraph 2 of the text of the Cease and Desist Order 2007 (SO) No. 15:

To send a letter of notice by mail with recorded delivery to the business entities that received the cease and desist order.
The sender thereof shall be Representative Director, a draft letter is as per Exhibit 1, the addresses of respective recipients are as per Exhibit 2, and the timing of the notice shall be within 15 days of your Commission's approval.

2. Method of notice to the City of Nagoya pursuant to Paragraph 2 of the text of the Cease and Desist Order 2007 (SO) No. 15:

To send a letter of notice to the City of Nagoya by mail with recorded delivery.
The sender thereof shall be Representative Director, a draft letter is as per Exhibit 3 and the timing of the notice shall be within 15 days of your Commission's approval.

3. Method of keeping our employees thoroughly informed as per Paragraph 2 of the text of the Cease and Desist Order:

To disseminate a letter of information to the employees (1,801 individuals) of our company to keep them thoroughly informed.
The sender of the letter shall be Yukio Suzuki, Representative Director, a draft letter is as per Exhibit 4, the employees to be thoroughly informed are as per Exhibit 5, and the timing of the information shall be within 15 days of your Commission's approval.

4. Measures necessary to implement the preventive measures as per Paragraph 4 (2) of the text of the Cease and Desist Order:

To plan and implement necessary measures as per Exhibit 6 with respect to periodic training of the personnel in charge of the sales and marketing for comprehensive civil engineering projects ordered by the City of Nagoya, addressing Anti-Trust Law compliance relative to receiving orders for such projects, and periodic auditing by legal personnel.

Attachments:

1. Draft letter of notice to be sent to the business entities that received cease and desist order (one letter): Exhibit 1
2. List of business entities to be notified: Exhibit 2
3. Draft letter of notice to be sent to the City of Nagoya (Cease and Desist Order to be attached as attachment): Exhibit 3
4. Draft letter of information to be disseminated to employees (Cease and Desist Order to be attached as attachment): Exhibit 4
5. List of employees to be informed: Exhibit 5
6. Draft implementation plan of preventive measures: Exhibit 6

KOSHIN No. 57
February 1, 2008

To: Mr. Yukio Suzuki, Representative Director
Toa Kensetsu Kogyo Company, Ltd.

Fair Trade Commission [seal]

Approval of Method of Notice, etc. and Measures to be Taken
Pursuant to Cease and Desist Order

The method of notice and the method of thorough information pursuant to Paragraph 2 of the text of the Cease and Desist Order 2007 (SO) No. 15 and the measures to be taken pursuant to Paragraph 4 of the same applied for approval on January 18, 2008 are hereby approved.

# ATTACHMENT 7

[draft translation]

February 15, 2008

To: General Manager of each branch office
Administrative Manager of each branch office
General Manager of each business department
Head of each business department administrative office
Head of departmental office of Head Office

From: Head Office Compliance Committee Chairman

Re: Submission of "Written Oath" concerning violation of laws and regulations

Regarding the above-captioned matter, as per the President's Circular dated February 15, 2008, it has been decided to obtain a written oath in the form attached hereto from each of the employees to whom the Company Employment Regulations are applicable.

You are hereby requested to make the Company Employment Regulations, etc., attached hereto thoroughly known in your branch office, business department or departmental office, whichever is applicable, organize all the forms from the applicable subjects, confirm the contents and submit them to us in the manner described below.

Subjects: Employees who are working at your branch office, business department or departmental office as of the date of obtaining written oaths from them (including special-status employees, consultants and contracted personnel, but excluding temps dispatched by agencies and part-time workers)
Those temporarily sent to other branch offices for support purposes should be handled by the respective branch offices. Those temporarily seconded to other companies should be handled by the respective companies.
* You should refer to the list of subject employees which will be sent to you separately from the Human Affairs Administration Office.

Completion of the form: Each employee must enter his/her employee number, position and name in his/her own handwriting. (Allograph and pre-printing of names are not accepted.)

Submit to: Head Office Compliance Committee Secretariat
(General Affairs Department Legal Section)

Deadline for submission: March 28, 2008

Questions: Head Office Compliance Committee Secretariat
(General Affairs Department Legal Section 03-3262-5102 Ext. 2227, 2228, 2231)
* Questions regarding the Company Employment Regulations:
Human Resources Department 03-3262-5104

Attachments: (1) President's Circular dated February 15, 2008
(2) Revised Intracompany Disposition Policy (draft)
(3) Revised Company Employment Regulations (draft), etc.
(4) Form of Written Oath

End

# ATTACHMENT 10

[draft translation]

ROTSU No. 118-15
March 31, 2008

To: Branch Manager
International Business Department Manager
Metropolitan Area Building Construction Business Department Manager
Toa Kensetsu Kogyo Labor Union Central Executive Committee Chairman

From: Human Resources Department Manager

Re: Revision of Intracompany Disposition Policy (partial revision of Company Employment Regulations)

Regarding the above-captioned matter, the preventive measures applied for approval of the Fair Trade Commission after receiving administrative disposition from the same Commission concerning certain construction projects ordered by the Defense Facilities Administration Agency have been approved.

Based on the above, it is hereby notified that the intracompany disposition policy has been revised as follows for the purpose of clarifying the intracompany disposition as it should be to be fairly and strictly applied to the executives and employees who were involved in acts in violation of the Prohibition of Private Monopolization and Maintenance of Fair Trade Act and other laws and regulations to be complied with.

Partial revision of Company Employment Regulations

(1) Revision

Company Employment Regulations Chapter 2 Human Affairs Section 5 Commendation and Disciplinary Actions Article 24 (Disciplinary Actions) and Article 26 (Disciplinary Dismissal) are revised as follows:

Article 24 (Disciplinary Actions)

Current:
Depending upon its extent, a disciplinary action shall be classified into reprimand, reduced pay, suspension of coming to work, dismissal from position, suspension of pay increase, demotion and disciplinary dismissal, and shall be determined as follows:

Revised:
Depending upon its extent, a disciplinary action shall be classified into reprimand, reduced pay, suspension of coming to work, dismissal from position, suspension of pay increase, demotion, **recommended resignation** and disciplinary dismissal and shall be determined as follows:

Item 7 to be added:
**Item 7 Recommended Resignation: In addition to reprimand, resignation shall be recommended. Disciplinary dismissal shall follow in the event of no submittal of a**

**letter of resignation within 7 days (including holidays) of the recommendation.**

Article 26 (Disciplinary Dismissal)

Current:
Disciplinary dismissal shall be applied in the event of any one of the following items, provided, however, that reduced pay, suspension of coming to work, dismissal from position, suspension of pay increase or demotion may be applied under certain extenuating circumstances:

Item 9 In the event of violation of any law or regulation to be complied with and subsequent penalization, causing to significantly damage the company's reputation.

Revised:
Disciplinary dismissal shall be applied in the event of any one of the following items, provided, however, that reduced pay, suspension of coming to work, dismissal from position, suspension of pay increase, demotion or **recommended resignation** may be applied under certain extenuating circumstances:

**Item 9 In the event that an act should be found to be in violation of the Prohibition of Private Monopolization and Maintenance of Fair Trade Act and other laws and regulations to be complied with, or in the event that the company or the subject individual should receive administrative disposition or criminal disposition, causing to significantly damage the company's reputation.**

Supplementary explanation:

Addition of "recommended resignation" to Article 24:

Disciplinary dismissal is subject to the limitation on the company retirement pension benefit set forth in the Employees Retirement Pension Policy (Article 12 Paragraph 3).
- The current Company Employment Regulations set forth "disciplinary dismissal" as the disciplinary action more serious than "demotion," resulting in a big gap in between.
- The disposition policy applied to executives (the President's Order) provides for "recommendation of resignation" as the most serious disposition, but no disciplinary policy exists to recommend resignation to employees.
For the above reasons, it has been decided to add "recommended resignation" between "demotion" and "disciplinary dismissal."
Additionally, no limitation on the company retirement pension benefit will be imposed on the disposition of "recommended resignation" if a letter of resignation is submitted by a prescribed deadline following the recommendation of resignation.

(2) Effective date:

March 31, 2008

End

[draft translation]

March 17, 2007

To: Executives

From: President

Re: Maintenance of Intracompany Disposition Policy

Regarding the above-captioned matter, after receiving a cease and desist order (administrative disposition) dated June 20, 2007, from the Fair Trade Commission pursuant to the Prohibition of Private Monopolization and Maintenance of Fair Trade Act (hereinafter referred to as the "Anti-Trust Law") concerning certain construction projects ordered by the Defense Facilities Administration Agency, we filed an application for [the approval of?] preventive measures with the said Committee, and our application was approved on August 28, 2007.

Based on the above, it is hereby notified that the intracompany disposition policy applicable to the executives and employees who were involved in acts in violation of the Anti-Trust Law and other laws and regulations to be complied with (hereinafter referred to as the "Anti-Trust Law, etc.") are prescribed as follows:

1. Disposition Policy

(1) Employees: The Company Employment Regulations Article 24 (Disciplinary Actions) and Article 26 (Disciplinary Dismissal) shall be revised as per attachment (effective March 31, 2008).

(2) Executives: The above Company Employment Regulations shall also be applicable and, depending upon the extent and the mode of the subject act, one of the following shall apply:

(1) Reduced compensation
(2) Suspension of coming to work
(3) Removal from executive position
(4) Demotion (change in executive position)
(5) Recommendation of resignation

2. Implementation Method

(1) The Compliance Committee will investigate the subject act and if any act is found to be in violation of the Anti-Trust Law, etc., the said Committee will notify the Review Committee of the fact and the need for proper disposition.
(2) The Review Committee will deliberate on the fact reported to it and determine a disposition proposal based on the aforementioned Disposition Policy.
(3) The President will make a decision on the disposition proposal submitted by the Review Committee.
(4) The disposition of an executive stricter than the removal from his/her position will be submitted to the Board of Directors for its resolution.

End