IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WATTS-HEALY TIBBITS A JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>IBC/TOA CORPORATION<br>Defendant-Intervenor. | No. 08-261C<br><br>(Senior Judge Smith) |

**MOTION FOR LEAVE TO FILE THE SECOND DECLARATIONS OF ROBERT W. TOELKES AND ATSUSHI ANDO**

Defendant-Intervenor, IBC/TOA Corporation, respectfully requests that the Court grant IBC/TOA Corporation leave to file the attached declarations of Robert W. Toelkes and Atsushi Ando in reply to Plaintiff's Reply to Defendant-Intervenor's Opposition to Plaintiff's Second Motion for Preliminary Injunction.

Given that plaintiff submitted additional allegations in its reply, IBC/TOA Corporation was deprived of the opportunity to respond, in writing. Therefore, we respectfully request that the Court accept the attached declarations for filing.

Dated: June 9, 2008

Respectfully submitted,

s/ S. Lane Tucker by s/Emily C.C. Poulin
S. Lane Tucker
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, AK 99501-1970
(907) 279-8561

Counsel to
IBC/TOA CORPORATION

Of Counsel:

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

# CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on June 9, 2008, I caused a copy of Defendant-Intervenor's foregoing Motion for Leave to File the Second Declarations of Robert W. Toelkes and Atsushi Ando to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/ Emily C.C. Poulin
Emily C.C. Poulin

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WATTS-HEALY TIBBITS A JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>IBC/TOA CORPORATION<br>Defendant-Intervenor. | No. 08-261C<br>(Senior Judge Smith) |

## SECOND DECLARATION OF ROBERT W. TOELKES

I, Robert W. Toelkes, under penalty of perjury, do hereby affirm and swear the following is true and correct to the best of my knowledge and belief.

1. I am the President of IBC Corporation, and IBC's representative to the IBC/TOA Corporation Joint Venture Committee. The committee has two members, the other being a TOA representative. We each have an alternate; mine is William E. Toelkes. Both IBC representatives are U.S. citizens. AR 2564-2565.

2. IBC's share of joint venture profits, losses, and property is 51percent, while TOA's is 49 percent. AR 2565. IBC has participated in other joint ventures of varying percentages of ownership.

3. IBC is performing 60 percent of the dollar value of this contract (approximately $50 million dollars). Ten percent of that work is subcontracted out under our supervision. We have provided virtually all of the equipment for this contract, which has a replacement cost of $25 million. Availability of local equipment results in substantial project savings because transportation and/or acquisition costs are eliminated.

4. A few years ago, I began discussing the possibility with TOA of bidding on projects together as a joint venture. Both IBC and TOA have performed contracts for the Navy, and TOA is currently performing Navy contracts in Japan. We have looked at other projects, and when this opportunity was presented determined that it would

utilize the combined strengths of our two companies. IBC's strengths are extensive local knowledge, substantial local resources including labor, equipment, concrete production, hot mix asphalt and quarry products, and experience in the original construction of Kilo Wharf. TOA's strengths are the construction and placement of concrete caissons, marine construction experience, and financial resources. AR 2359.

5. The joint venture committee has the following authority, which must be exercised *unanimously*: approving issuance of the bid; selecting attorneys, sureties, certified public accountants and project manages; and amending the provisions of the joint venture agreement. The TOA representative, as chairman, has the authority to set the time and place for committee meetings. AR 2565.

6. The joint venture committee approves large expenditures, and reviews and approves accounting procedures, monthly progress billings, monthly cash flow statements, and monthly progress reports. The committee is also responsible for ensuring that the schedule is met and that profit goals are maintained. AR 2565.

7. The joint venture agreement requires that the parties act in concert for the sole benefit of the joint venture, and shall not take individual actions that will prejudice the business objectives of the joint venture. AR 2567.

8. Joint ventures typically appoint a managing member, and in my experience a management fee is typically paid to the managing member. In this joint venture TOA has been so designated, and the management agreed upon is 4 percent. AR 2569. In my experience this is a reasonable and customary management fee. The management fee includes any and all home office expenses.

9. With respect to management of the construction project (versus management of the joint venture), the organizational chart for the joint venture shows that on the construction team the safety manager, the civil superintendent, the structural, civil, mechanical, electrical, architectural, underwater, and geotechnical functions are performed by U.S. citizens or companies. AR 2570, 2572. I am responsible for managing the subcontracting plan. The construction team reports to the management committee. AR 2581.

10. With respect to responsibility for *project* performance, responsibilities are as follows: the joint venture is responsible for project management, material procurement, quality control, sub-contractor management and coordination of civil and mechanical work, project safety, and storm wave protection and the caisson leveling course. AR 2575. IBC is responsible for marine dredging, concrete structures, caisson ballast installation, civil work, supply and installation of pavement, and all architectural divisions. AR 2575, 2358. TOA is responsible for manufacturing, transporting and installing caissons, installing pilings, and cathodic protection. AR 2575, 2358.

11. With respect to performance of the construction contract, if agreement cannot be reached on a particular issue the managing partner may decide the issue, and the other partner may challenge the decision through arbitration. AR 2567.

12. As part of the pre-award survey regarding financial responsibility the contracting officer asked the joint venture numerous questions regarding finance, lines of credit, working capital, liability, and management of the joint venture. AR 2357-2362; 2516, 2519-2520 all of the questions were fully answered by the joint venture.

Dated: June 9, 2008

Robert W. Toelkes
Executive Vice President
International Bridge Corporation

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WATTS-HEALY TIBBITS A JV,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>IBC/TOA CORPORATION<br>Defendant-Intervenor. | No. 08-261C<br>(Senior Judge Smith) |

## SECOND DECLARATION OF ATSUSHI ANDO

I, Atsushi Ando, under penalty of perjury, do hereby affirm and swear the following is true and correct to the best of my knowledge and belief.

1. I, on behalf of TOA, have for some time discussed with IBC the possibility of bidding projects on Guam. After jointly considering and rejecting other projects, we chose to joint venture on the Kilo Wharf Extension because it combines TOA's caisson and marine construction experience with IBC's concrete and asphalt expertise, local resources, local equipment, local experience, and relevant background.

2. As I said in my first declaration, disciplinary action was implemented regarding the violations. TOA's President was fined 30 percent of his monthly compensation, the vice-president was fined 20 percent of his monthly compensation, and the director involved was demoted.

3. I have attached an organizational chart and statement from the Chairman of the Japan Fair Trade Commission ("JFTC") regarding its recent enforcement of bid rigging laws, which is on the JFTC website in English. The JFTC is different than the Ministry of Land, Infrastructure, and Transport. The JFTC issues cease and desist orders and surcharges. The Ministry issues penalties (ten percent of the contract

amount) and suspensions.

Dated: June 9, 2008

Atsushi Ando
Manager, International Division,
Contract Administration
Department
TOA Corporation

## Message from Chairman Takeshima

January 2008



I was reappointed Chairman of the Japan Fair Trade Commission (JFTC) in last September and 2008 is the sixth year of my tenure as Chairman. As we begin a new year, the JFTC stands committed to the continued rigorous enforcement of the Antimonopoly Act and to actively promoting competition policies.

Two years have passed since the 2005 amendment of the Antimonopoly Act took effect in 2006. During this period, the implementation of the Act has proceeded smoothly and the revised provisions have steadily generated their expected results. The application of the newly introduced leniency program has proceeded smoothly. No less important has been the progress made in the use of the powers of compulsory criminal investigation by the Criminal Investigation Department, which was created for the enforcement of the amended Act. During 2007, these powers were actively utilized in bringing criminal charges against violators in such cases as bid-rigging in the Nagoya municipal subway system construction project, and bid-rigging in geological surveying, planning, and design contracts awarded by the Japan Green Resources Agency. Due to increased uncertainty in the economic outlook and growing concern with the broadening of social and economic disparities, the Japanese public has recently tended to take a more cautious stance on the excessive advancement of competitive society. However, competition is the fountainhead of economic growth in free market economies, and the JFTC intends to rigorously and actively counter price cartels and bid-rigging practices, including government facilitated bid-rigging, which have a serious impact on the lives of the people. Also, needless to say, competition must be conducted in a fair manner. In order to maintain a fair competitive environment, we shall deal swiftly and effectively with unfair trade practices that may cause unfair disadvantages to small- and medium-sized enterprises, including practices involving the abuse of superior bargaining position and selling at unjustly low prices.

One of the most important challenges that the JFTC has before it in 2008 is to move forward on a new round of amendments to the Antimonopoly Act as mandated in the supplementary provisions of the 2005 amendment of the Antimonopoly Act. As the first step, discussions were held by the Advisory Panel on Basic Issues Regarding the Antimonopoly Act established under the Cabinet Office, and the report of the Advisory Panel was released in June 2007. Responding to the proposed amendments to the Antimonopoly Act contained in this report, the JFTC published its "Prospective Amendments to AMA" in October 2007. In light of the fundamental principles set forth in this document, the JFTC intends to speedily prepare a draft bill for submission to the ordinary session of the Diet. This draft bill will contain the various amendments deemed necessary, such as the introduction of a surcharge system applicable to exclusionary type of private monopolization and to certain types of unfair trade practices.

The increasing globalization of corporate and economic activities has added to the importance of international cooperation among competition authorities. For this reason, Japan has been strengthening its bilateral relations with such leading countries and regions as the United States, the European Union, Canada, and South Korea by engaging in bilateral discussions and by concluding bilateral antimonopoly cooperation agreements. Japan is also an active participant and contributor to multilateral discussions on competition policy. In recent years, the International Competition Network (ICN) has come to play an increasingly important role as a framework for multilateral cooperation. The ICN draws its key members from the competition authorities of various countries and regions throughout the world, and is engaged in ongoing discussions through a number of working groups organized around specific themes, such as mergers and cartel activities. Each year, the ICN holds an annual conference for discussions and working group reports, and in April 2008 the 7th Annual ICN Conference will be held in Kyoto, marking the first time the conference is hosted by Japan. As the organizer of the conference, the JFTC will be in a position to steer the deliberations of the conference. Currently, we are busy preparing for the event, and earnestly hope that the success of the Kyoto Conference will heighten the international profile and recognition of the JFTC and of Japan's competition policies.

In addition to the Antimonopoly Act, the JFTC is also responsible for the enforcement of the Premiums and Representations Act and the Subcontract Act, which together comprise an important aspect of our overall mission. During the past year, the Premiums and Representations Act was very much in the limelight as false labeling and misrepresentation of beef and a number of other products emerged as a major social problem. To maintain an environment in which consumers are able to make appropriate product choices, the JFTC will take rigorous and swift action against unjustifiable representations that mislead consumers. Regarding the Subcontract Act, recent economic conditions have continued to place subcontracting enterprises under severe pressure. Against this backdrop, the JFTC will endeavor to ensure fairness in subcontracting transactions in line with the Strategy for Raising

the Growth Potential of Individuals and SMEs that have been formulated as part of the government's overall growth strategies. Specifically, we shall ensure fairness through such means as the strict enforcement of the Subcontract Act and the adoption of stronger action against "beating down of prices."

In recent years, we have seen a marked expansion in international corporate activities and a concurrent increase in cases involving violations of the competition laws of a multiple number of jurisdictions. These developments have heightened the need for the international enforcement activities and the strengthening of international cooperation among competition authorities. Against this backdrop, the JFTC looks forward to promoting international cooperation in competition policies and to bolstering its international presence through such means as establishing bilateral agreements and actively contributing to the international cooperative frameworks of the OECD and the International Competition Network (ICN). As a significant step to expand international cooperation, the JFTC will host the ICN annual conference in 2008. We would like to take such an opportunity to further strengthen cooperation through active exchanges of opinions among competition authorities.

The JFTC continues to face a broad range of tasks and challenges that must be addressed during 2008. With these challenges in mind, the JFTC shall remain committed to appropriate policy enforcement and to meeting the nation's expectations by fully performing its duties and responsibilities.

Back To Toppage

Japan Fair Trade Commission: 〒100-8987 1-1-1 Kasumigaseki, Chiyoda-ku, Tokyo,Japan
Tel: +81-3-3581-1998

Copyright © 2007 Japan Fair Trade Commission. All R

# The JFTC enforces the Antimonopoly Act, and deploys competition policies positively.

The JFTC is an administrative commission consisting of 5 members in total, i.e. the Chairman and 4 commissioners. These members are appointed from among experts in law or economics by the prime minister with the consent of the Diet. The JFTC is unique in that it performs its duties as independent administrative commission without being directed or supervised by other organs. Its organizational unit known as General Secretariat takes charge of clerical affairs of the JFTC with regard to investigation and supervision of those cases involving the Antimonopoly Act.

## Enforcement of laws including the Antimonopoly Act as a law-enforcement agency

In order to maintain fair and free competition in a market, the JFTC enforces 3 laws: the Antimonopoly Act and its complementary laws known as the Premiums and Representations Act and the Subcontract Act. The JFTC makes its effort to restore competitive order immediately by giving cease and desist orders when illegal acts have been detected and surcharge payment orders when price cartels, etc. have taken place.

## Positive deployment of competition policies as a policy-enforcement agency

In an effort to establish internationally-opened, free, fair and dynamic economic society, the JFTC devotes itself to the improvement of the foundation for promoting regulatory reforms and positively deploying competition policies. Its efforts are also directed toward further improvement of the Antimonopoly Act, researches and proposals for regulatory reforms, betterment of competition-restricting administrative guidance, promotion of improvement of public contract bidding systems, and establishing and amending various guidelines as preventive measures for violations.

## Organizational Chart

