**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **WATTS-HEALY TIBBITS A JV,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08-261C** |
| **v.** | ) | **(Senior Judge Smith)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION FOR RECONSIDERATION

Defendant, the United States, respectfully requests that the Court reconsider its order of June 17, 2008, that apparently would require the Contracting Officer ("CO") to testify concerning whether, once he learned of proceedings at the Japanese Fair Trade Commission ("JFTC"), he: (a) reconsidered his affirmative determination of responsibility decision, and, if so (b) what was his thought process (inasmuch as reconsideration has not resulted in his terminating the contract); or (c) if not, whether on reflection he believes that he should have reconsidered, and (d) if, so, what would he decide, or (e) if, on reflection he decided not to reconsider, why.

Such inquiry is beyond the scope of review pursuant to 28 U.S.C. § 1491(b) and the Administrative Procedure Act ("APA"). Further, no question posed to the CO could elicit testimony germane to matters within the scope of the Court's jurisdiction.

## ARGUMENT

### I. The Court's Jurisdiction Is Limited To Review Of An Existing Agency Decision

The Court's jurisdictional statute mandates that bid protests be reviewed pursuant to the APA:

> (1) Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render

> judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.
>
> (2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.
>
> (3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.
>
> (4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

28 U.S.C. § 1491(b) (emphasis added).

Congress created the Court to permit "'a special and limited class of cases' to proceed against the United States." Hercules Inc. v. United States, 516 U.S. 417, 423 (1996) (quoting Tennessee v. Sneed, 96 U.S. 69, 75 (1878)). Accordingly, the Court "'take[s] cognizance only of those claims which by the terms of some act of Congress are committed to it.'" Hercules, 516 U.S. at 423 (quoting Thurston v. United States, 232 U.S. 469, 476 (1914)); First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999); James v. Caldera, 159 F.3d 573, 580-81 (Fed. Cir. 1998).

In determining the extent of its bid protest jurisdiction by applying the plain language of section 1491(b) and the APA, the Court has explained that this jurisdiction is limited to a review of agency decisions. In a case in which the plaintiff had argued that the Court should review

whether the U.S. Government Accountability Office ("GAO") acted unlawfully in considering a bid protest, "[t]he Court reject[ed] plaintiff's argument on the ground that the Tucker Act limits this Court's bid protest jurisdiction to a review of agency decisions." Advance Construction Services v. United States, 51 Fed. Cl. 362, 364-365 (Fed. Cl. 2002). The Court reasoned that "[s]ection 1491(b)(1) must be construed together with § 1491(b)(4), which incorporates into the Tucker Act the Administrative Procedure Act standard of review of agency action." Id. at 365. The Court therefore concluded that, "[i]nterpreted together, the language of § 1491(b)(1) and (b)(4) plainly apply to agency procurement decisions and not to the GAO in its review of bid protests." Id. at 365.

Indeed, it is well established that the matters to be considered by the Court in judging the rationality and lawfulness of an agency decision are only those matters before the decision making authority at the time of the decision:

> The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (citations omitted).

Pursuant to this tenet of administrative law, the Court applies "thorough, probing, in-depth review" to "agency action, findings, and conclusions" that are otherwise entitled to the presumption of regularity. Chas. H. Tompkins Co. v. United States, 43 Fed. Cl. 716, 719 (Fed. Cl. 1999); see 5 U.S.C. § 704 (APA provision defining reviewable "Actions reviewable" to mean

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court") (emphasis added); 28 U.S.C. § 1491(b)(1) (identifying action made reviewable by statute as "the award of a contract."). Here, the aspect of "the award of a contract" being reviewed is the CO's affirmative determination of responsibility conducted on March 26, 2008, the date of award.

The CO knew of no JFTC proceedings involving TOA when he made his affirmative responsibility determination as to IBC/TOA Corp. See Yoshimura Dec. II at ¶ 7. Therefore, to require the CO to review new information first presented after award of the contract by plaintiff's counsel is beyond the scope of the Court's "thorough, probing, in-depth review" of the agency action made reviewable by statute here.

That this matter involves a responsibility determination is also of no moment. The standard of review has been clearly defined by the Court of Appeals for the Federal Circuit and this Court in Impresa and Precision Standard. This case presents no new issues that would cause the Court to enlarge its jurisdictional role beyond review of the existing agency decision.

Responsibility decisions are largely a matter of judgment on the part of the CO, who possesses wide discretion to make this decision. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334-45 (Fed. Cir. 2001); John C. Grimberg Co., Inc. v. United States, 185 F.3d 1297, 1303 (Fed. Cir. 1999); Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 752-53. (2006). Thus, although the CO may seek additional or clarifying responsibility information from a contractor, he is not obligated to do so. Rather, "the contracting officer is the arbiter of what, and how much, information he needs." Grimberg, 185 F.3d at 1303; Precision Standard, 69 Fed. Cl. at 753.

The Courts then review responsibility determinations for an abuse of discretion. In both Impresa and Precision Standard, the Courts ordered supplementation of the existing record because the record in those cases either did not exist or was unclear as to what was considered by the CO. Impresa, 238 F.3d at 1338 ("Based on the evidence of the Italian court proceedings, the Impredil filing at the Chamber of Commerce listing Carmelo La Mastra as a technical manager and company signatory, and the letters granting Salvatore La Mastra signatory authority of Lara and Impredil, which the parties agreed were all before the contracting officer, we conclude that this is one of those rare cases in which an explanation is required." ) (emphasis added); Precision Standard, 69 Fed. Cl. at 753 (noting that"record contain[ed] neither a contemporaneous record of the factors considered nor attachments of documentation demonstrating what was considered.")

In contrast, in this procurement the responsibility review was documented in detail in the Government's Business Clearance Memorandum. AR 1827-30 (Post Business Clearance Memorandum, dated March 12, 2008, at 73-76). Mr. Yoshimura's second declaration also clearly states that he had no knowledge of the alleged incidents prior to award, and sets forth the detailed procedures that were followed in conducting the responsibility review. Yoshimura Dec. II at ¶¶ 7-8. Accordingly, there is no basis to further probe the CO's reasoning.

## II. There Is No Legal Basis To Compel A Second Responsibility Determination

There is no authority that supports the conduct of a post-award responsibility determination based upon non-record information brought to the Court's (and agency's) attention for the first time after litigation has begun.

Rather, the FAR establishes the standards for COs to make contractor responsibility determinations, analyzing, among other things, whether the prospective contractor possesses

"adequate financial resources to perform the contract, or the ability to obtain them" and "a satisfactory record of integrity and business ethics." FAR 9.104-1(a) and (d). The regulatory procedures for establishing responsibility are identified in FAR § 9-105. The FAR encourages CO to obtain sufficient information before awarding a contract to ensure that a proposed contractor meets the standards in FAR § 9.104-1. The CO may obtain information directly from contractors and perform a "pre-award survey." FAR § 9-106. The CO should also consider the Excluded Parties List system, records and experience data, and information from Government agencies, business and trade associations. FAR § 9.105-1(c).

The FAR and case law establish that the responsibility determinations are based upon the information available to the CO on the date of award, not information dredged up by a competitor after award. Indeed, "[t]he contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract. When an offer on which an award would otherwise be made is rejected because the prospective contractor is found to be nonresponsible, the contracting officer shall make, sign, and place in the contract file a determination of nonresponsibility, which shall state the basis for the determination." FAR § 9.105-2(a)(1).

Furthermore, this case is much like Southern Foods, in which the disappointed bidder attempted to challenge the agency's responsibility determination based upon claims that the awardee was under criminal investigation, and thus, was nonresponsible. Southern Foods, Inc. v. United States, 76 Fed. Cl. 769 (2007). In that case, the plaintiff alleged that "the responsibility determination consisted of merely 'vetting' USF against the Excluded Parties List System" and therefore violated the applicable Army Regulation. Id. at 781. The Court rejected this assertion,

instead focusing only upon whether the CO's actions at the time of award were arbitrary and capricious. Id. Likewise, numerous GAO decisions also make clear that post-award submissions are irrelevant to responsibility determinations. See Vulcan Engineering Co., 1984 U.S. Comp. Gen. LEXIS 400 ("However, responsibility is determined as of the time of award--here March 5--and the award of a contract by the contracting officer necessarily includes an affirmative determination by the contracting officer of the awardee's responsibility. . . . Accordingly, not only have we held that evidence of a firm's responsibility may be furnished at any time prior to award, . . . but we also believe that a contracting agency may not fail to take into consideration when deciding whether the make award to a particular bidder evidence submitted prior to award and tending to show the nonresponsibility of the proposed awardee."); Beacon Winch Company--Request for Reconsideration, 1983 U.S. Comp. Gen. LEXIS 683 (responsibility "determination should be based upon the most current information available to the contracting officer"); Inflated Products Company, Inc., 1977 U.S. Comp. Gen. LEXIS 1934 (contracting officer should make final determination of responsibility on the basis of information available as closely as practicable to contract award); Henry Spen & Company, Inc., 1976 U.S. Comp. Gen. LEXIS 2960 (since a prospective contractor's responsibility should be measured with respect to information available at the time of award, it was proper for a contracting agency to consider information brought to its attention after the initial finding of nonresponsibility but prior to award of any contract).

There is no authority in the signed contract between the Government and IBC/TOA Corp, the FAR, or any judicial decision that allows the CO to make a new responsibility determination based upon newly proffered evidence after award, unless a false certification is provided. See

FAR § 52.209-5(e) (noting that "[t]he certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.").

Indeed, plaintiff's proposed rule would open every procurement to post-award challenges based upon evidence generated by private investigators and lawyers hired by disappointed bidders, unlawfully displacing Contracting Officers' regulated and orderly pre-award information gathering practices.

## III. No Further Explanation Is Required

The CO has already explained that he did not know of the JFTC proceedings:

> With respect to the incidents in the materials provided by Mr. Watts, neither I, nor to my knowledge, any members of my procurement team, had any knowledge of the alleged fines and suspensions prior to Mr. Watts having presented the information to me.

Yoshimura Dec. II at ¶ 7.

There is no basis to require the CO to provide opinions or speculation concerning plaintiff's post-award investigation, and the CO has no authority (from the contract or from the FAR) to conduct a second responsibility determination. Rather, the Court is tasked by statute to determine whether the procedural steps taken by the CO were permissible. See id. at ¶ 8 (describing steps taken); AR 1827-30. Plaintiff has made no showing that the CO knew about the JFTC's citations. Further, the CO performed a highly rigorous pre-award survey which included, among other things, verifying contractor and key personnel for debarment on EPLS,

review of the Contractor Performance Assessment Reporting System, a review of Dun & Bradstreet information, a review of representations and certifications, and performance of an internet search through an internet search engine. Yoshimura Dec. II at ¶ 8; AR 1827-30.

The narrow question before the Court is whether the responsibility determination conducted on March 26, 2008, was arbitrary and capricious. The issue does not include whether evidence generated in litigation by plaintiff's counsel after award might lead the CO to reconsider his decision. Unlike Impresa and Precision Standard, the CO has already explained that he had absolutely no knowledge of the Japanese proceedings before award. There are no other issues that require extra-record testimony here.

## IV. Post-Award Contract Administration Exceeds The Court's Bid Protest Jurisdiction

The essence of the inquiry is to determine the CO's views of post-award information concerning the contractor's record of integrity. Such contract administration matters are beyond the scope of review under 28 U.S.C. § 1491(b) and 5 U.S.C. § 706, which is limited to "the 'contemporaneous' record made at the time the action was taken." OAI Am., Inc. v. United States, 68 Fed. Cl. 108, 110 (Fed. Cl. 2005) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

Courts interpreting section 706 have recognized the limited scope and function of APA review. As the Supreme Court has observed,

> [t]he principal purpose of the APA limitations we have discussed – and of the traditional limitations upon mandamus from which they were derived – is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy agreements which courts lack both expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved – which would mean

> that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 66-67 (2004).

Indeed, the "day-to-day agency management" of the contract is squarely outside the scope of the Court's jurisdiction, which is limited to reviewing the "award of a contract," 28 U.S.C. § 1491(b)(1), not post-award "performance." Rather, "[p]rotests, like this one, alleging that the awardee will not deliver equipment in conformance with contract requirements concern matters of contract administration, which are the responsibility of the contracting agency and which are not considered under our bid protest function." Northern Telecom Inc. v. United States, 8 Cl. Ct. 376, 381 (1985); see also Precision Design And Manufacturing Co., Inc., 1977 U.S. Comp. Gen. LEXIS 2086 (holding that contention that existing contracts should be terminated or suspended due to criminal indictments against several of contractor's officers and employees pertains to matter of contract administration, which is function and responsibility of contracting agency and not for resolution under GAO bid protest procedures.); FAR 1.601(a) ("Unless specifically prohibited by another provision of law, authority and responsibility to contract for authorized supplies and services are vested in the agency head."); FAR 1.602-2 ("Contracting officers are responsible for ensuring performance of all necessary actions for effective contracting, ensuring compliance with the terms of the contract, and safeguarding the interests of the United States in its contractual relationships. In order to perform these responsibilities, contracting officers should be allowed wide latitude to exercise business judgment.").

## CONCLUSION

For these reasons, we respectfully request that the Court reconsider its order that the CO testify concerning plaintiff's newly proffered evidence that was not before the decisionmaker at the time of award. Such a hearing is outside of the scope of review and would require the CO to speculate about evidence generated by plaintiff through its attorneys and/or private investigators after award, rather than information gained in the pre-award survey process. Such review would create havoc in the award and administration of Government contracts and would subject winning contractors to endless private investigations by their competitors after award.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ TODD M. HUGHES
Deputy Director

/s/ STEPHEN C. TOSINI
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-5196
Fax. (202) 514-7969
Attorneys for Defendant

OF COUNSEL:
ROBERT E. LITTLE
Department of the Navy
Washington, D.C.

June 26, 2008

**CERTIFICATE OF FILING**

I hereby certify that on this 26th day of June 2008, a copy of the foregoing "MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by electronic mail and operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Stephen C. Tosini