# In the United States Court of Federal Claims

Case No. 08-261C
Filed Under Seal July 18, 2008
Reissued for Publication July 23, 2008
FOR PUBLICATION

| | |
|---|---|
| WATTS-HEALY TIBBITTS A JV, *Plaintiff,* v. THE UNITED STATES, *Defendant,* and IBC/TOA CORPORATION, *Defendant-Intervenor.* | Bid Protest; Responsibility Determination; Preliminary Injunction; FAR 52.209-5; Arbitrary and Capricious; Requisite Business Integrity; International Considerations are Implicated |

*Michael H. Payne*, *Esquire*, Payne Hackenbracht & Sullivan, Ft. Washington, PA, for Plaintiff.

*Stephen C. Tosini*, Trial Attorney, with whom were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C.; and Robert E. Little, Of Counsel, Department of the Navy, Washington, D.C., for Defendant.

*S. Lane Tucker*, Perkins Coie LLP, Anchorage, AK, for Defendant-Intervenor.

## OPINION AND ORDER

**SMITH**, Senior Judge.

Before the Court are Plaintiff's Motion for Reconsideration of this Court's order dated April 25, 2008, a Second Motion for Preliminary Injunctive Relief based on additional grounds and an Amended Complaint. For the reasons set forth below, and with reluctance, the Court must hereby **GRANT** Plaintiff's Second Motion for Preliminary Injunctive Relief.

## Introduction

Equitable relief is always an extraordinary remedy in the Anglo-American legal system and thus, it should never be used when legal relief is adequate. Further, when arbitrary and capricious action is alleged of federal officials in the performance of their duties another high threshold must be crossed before such a finding is made. The standard for finding an action arbitrary and capricious is very deferential to the Government decision. Finally, when national security is at stake courts must rely on the government's expertise in this area and the judiciary's lack thereof. However, in this case, all the thresholds have been overcome by the facts of this case and the law the Court must look to, at least as to preliminary relief.

First, it is clear that if equitable relief is not provided Plaintiff has a high probability of suffering irreparable injury. More important, the public may also suffer such injury through a violation of the Nation's procurement laws, and also through the possibility of obtaining an unethical contractor.

Second, the very definition of arbitrary and capricious action is decision-making that ignores the relevant factors critical to the decision. In this case, based upon information provided by the protestor and gleaned from the testimony of the contracting officer at the hearing, there is strong reason to believe the relevant factors were not considered in determining whether the awardee, TOA Corporation (TOA), was a responsible party.

On the third hurdle, national security, the Government has stressed the importance of completing the wharf in question here on schedule. The Court does not quarrel with and accepts this assertion. However, there is no clear evidence that a serious review of the awardee's responsibility by the Navy would be inconsistent with the required completion schedule. There has also been evidence presented by the protestor that mobilization has not yet begun and that the project is still in the permit stage. Finally, national security cannot be aided by violating our procurement rules and using a contractor which has engaged in unethical conduct and practices violative of Japanese law, and which certainly would be violative of American law if committed in the United States.

Therefore, it is with reluctance that the Court is compelled by the facts to take this strong step and **GRANT** the limited preliminary equitable relief discussed below.

## Procedural History

On October 5, 2007, the Naval Facilities Engineering Command, Pacific, issued a solicitation requesting proposals to construct the Kilo Wharf extension in Guam. On November 19, 2007, the bidders provided technical proposals to the Navy. Watts-Healy Tibbitts and IBC/TOA Corporation were two of the bidders. On March 26, 2008, Plaintiff was informed that an award had been made to IBC/TOA. Thereafter, on April 10, 2008, Watts-Healy Tibbitts filed its first post-award bid protest requesting a temporary restraining order, a preliminary and a permanent injunction and declaratory judgment arguing that the "American Preference Policy" should have been applied to

the IBC/TOA proposal. This was denied in a sealed opinion by this Court filed on April 25, 2008 and unsealed on May 2, 2008.

On May 5, 2008, Watts-Healy Tibbitts filed a Motion for Reconsideration of this Court's April 25, 2008 opinion together with a second Motion for Preliminary Injunctive Relief based on additional grounds and an Amended Complaint. After full briefing, on June 9, 2008 the Court heard oral argument on Plaintiff's Motion. The matter was taken under advisement and, on June 17, 2008, the Court held a status conference whereupon the Court denied-in-part Plaintiff's Motion to Reconsider the Defendant's decision not to apply the twenty percent preference but held in abeyance Plaintiff's other contentions. The Court ordered the contracting officer to appear to testify regarding the new facts related to the responsibility issue discussed below. On June 26, 2008, Defendant filed a Motion to Reconsider this order which was subsequently denied. On July 15, 2008, the contracting officer testified before this Court.

## **Facts**

### 1. **The Solicitation**

The Naval Facilities Engineering Command, Pacific, issued a solicitation requesting proposals to construct the Kilo Wharf extension in Guam. The Solicitation provided for a Pre-Award Survey/Responsibility Determination, citing FAR 9.104. Among other things, this Solicitation provision provided that the prospective contractor must demonstrate a ". . . satisfactory performance record, and be otherwise eligible to receive an award under applicable laws and regulations." *See* Solicitation, Document 00100, Paragraph 1.24.

To facilitate a contracting officer's determination of responsibility and business integrity, all federal contractors are required to furnish representations and certifications. One of those certifications, pursuant to FAR 52.209-5, entitled "Certification Regarding Debarment, Suspension, Proposed Debarment, and Other Responsibility Matters (Dec 2001)" requires a certification as follows:

> (B) Have * have not * , within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and
>
> (C) Are * are not * presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in paragraph (a)(1)(i)(B) of this provision.

**2. TOA Facts**

TOA Corporation is a Japanese corporation that specializes in marine construction and dredging and has also performed work on other government contracts, both for Japan and the United States.

On or about June 22, 2007, the Japan Fair Trade Commission filed an administrative disposition order requiring the payment of 111.98 million yen as the surcharge for TOA's violation of Japan's Antimonopoly Law. The violation involved bid rigging. *See* Pl. Mem. Ex. A and B. The Japan Fair Trade Commission (JFTC) usually imposes a surcharge equivalent in the amount to 10% of sales generated as a result of illegal practices, including bid rigging. TOA was ordered to pay 15% because the JFTC stated that the company had previously been involved in other bid rigging cases. *Id.*

On November 14, 2007, the JFTC ordered TOA to pay 1.92 billion yen, again for bid rigging. *See* Pl. Mem. Ex. C. On March 24, 2008, the TOA Corporation also received a business suspension order from the Ministry of Land, Infrastructure, Transport and Tourism, following the company's violation of the Antimonopoly Law. *See* Pl. Mem. Ex. D.

## Discussion

The awardee, TOA, did not state on its certification that it had been found to have violated Japanese law, based upon bid rigging, and that it had fines imposed upon it by the Japanese government. Plaintiff alleges that TOA should have disclosed this conduct under FAR 52.209-5. Further, Plaintiff alleges that if TOA had disclosed its violations, the result would have required the contracting officer to conclude that the corporation was non-responsible under FAR 9.104. The question is, therefore, after the contracting officer was alerted as to these violations, was his decision that the awardee was still responsible arbitrary and capricious?

**1. The Decision is Arbitrary and Capricious**

In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006). *Arch Chems, Inc. v. United States*, 64 Fed. Cl. 380, 384-85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A). To determine whether the agency's decision was one that was arbitrary and capricious, the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324,1333 (Fed. Cir. 2001). Furthermore, "[d]eference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations." *M.W. Kellogg Co. v. United*

*States*, 10 Cl. Ct. 17, 23 (1986). "This deference is particularly great when a negotiated procurement is involved and is greater still when the procurement is a 'best value' procurement." *Bean Stuyvesant, LLC v. United States*, 48 Fed. Cl. 303, 320 (2000) (citations omitted). "Responsibility decisions are largely a matter of judgment, and contracting officers are normally entitled to considerable discretion and deference in such matters. When such decisions have a rational basis and are supported by the record, they will be upheld." *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002). The Court will "interfere with the government procurement process 'only in limited circumstances.'" *EP Production, Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (citations omitted). And, in evaluating an agency's decision, the Court cannot "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

In this case, based upon information provided by the protestor and gleaned from the testimony of the contracting officer at the hearing, there is strong reason to believe the relevant factors were not considered in determining whether the awardee TOA was a responsible party. It is clear that TOA was levied fines and sanctions by the JFTC requiring the payment of 111.98 million yen, 1.92 billion yen, and a business suspension order from the Ministry of Land, Infrastructure, Transport and Tourism. Defendant argues that the contracting officer did not know about these violations until after the contract was awarded and that after he received this information the contracting officer did re-evaluate the responsibility determination and found TOA to be responsible.

In support of his holding TOA a responsible awardee, the contracting officer testified that because bid rigging is common in Japan it does not rise to a level serious enough to render the corporation not responsible. It seems to this Court that the momentous decision to ignore ethical and statutory violations that would almost certainly disqualify an American company cannot be made in an almost unthinking way at the basic operational level of the contracting process. It may well be that the Navy wants to accept these violations as appropriate for foreign policy reasons or other legitimate reasons of national or military policy. The Court cannot say that the Navy cannot do this. If it does so, however, the Navy, not some subdivision of a subdivision, must make the policy call with respect to the level of business integrity that is required in international contracts with foreign policy implications for the responsibility determination to be other than arbitrary and capricious. This requires clear guidance from NAVFAC on the ethical standard applicable to the companies in TOA's situation, and that must come from either a flag officer or presidential appointee who can speak with the authority of the Navy on the policy at issue. In order to achieve this result, the Court must require the contract's re-solicitation or as an alternative allow the Navy to designate a new contracting officer to make a new responsibility determination. The Navy through either the flag officer or at presidential appointee level must provide the contracting officer with a clear statement with regard to its policy regarding the level of business integrity required in order to find a contractor responsible. This is not meant to criticize the contracting officer who made a decision based upon limited information without applying any standard for the level of business integrity required for this type of international transaction. There apparently was not a clear Navy policy for him to follow. The contracting officer testified that he also made his decision based upon undisclosed legal advice, which the Government has claimed is privileged, and

therefore, did not reveal that information to the Court. Further, even though the contracting officer testified that he did re-evaluate the responsibility determination, the contracting officer alluded to the fact that because the award had already been made he could not disrupt that award. This leads the Court to believe that the responsibility decision was merely a *fait accompli*. It appears to have been made with little or no reference to the reasons for having such a requirement.

One further note on the standard for arbitrary and capricious decision-making. The Government has placed great weight on the argument that in making the initial determination the award decision was not arbitrary and capricious because the contracting officer did not know of the negative information about the awardee. This argument has an Alice-in-Wonderland ring to it. All the government has to show to prove the decision was not arbitrary and capricious is that the contracting officer was in the dark? There may be a trace of logic here, but the Court has not found it.

**2. Granting of the Preliminary Injunction**

In order to obtain preliminary equitable relief, a party must demonstrate 1) a substantial likelihood of success on the merits; 2) specific, irreparable harm; 3) the balance of the hardships tips in its favor; and that 4) the preliminary injunction is in the public interest. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003). Here, it is clear to the Court that if equitable relief is not provided, Plaintiff has a high probability of suffering irreparable injury. More important, the public may also suffer such injury through a violation of the Nation's procurement laws and also possibly obtaining an unethical contractor. At this juncture, Plaintiff has demonstrated that there is a substantial likelihood that Plaintiff will succeed on the merits and that the balance of hardships tips in its favor. Therefore, even though injunctive relief for a disappointed offeror is appropriate "only in extremely limited circumstances," *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 120 (2000) (quoting *CACI, Inc. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983) this case is one of these "limited circumstances."

## <u>Conclusion</u>

Whether TOA is legally eligible for this contract is doubtful to the Court on the facts currently before the Court. However, it is crystal clear that no adequate determination of this question has been made by the contracting officer. This is based upon a failure of the contracting officer to obtain definitive guidance on the Navy's required level of business integrity for international transactions in cases like this. Therefore, the Court has no choice but to find the contracting officer's decision to be arbitrary and capricious and to issue a preliminary injunction against proceeding withe performance of the contract.

## <u>Order of Injunction</u>

**In accordance with Rule 65(a) of the Rules of the United States Court of Federal Claims, the United States of America, the Naval Facilities Engineering Command, Pacific, and its officers, agents, servants, employees and representatives, and all persons acting in concert and participating with them respecting further performance of the contract, be and they are hereby RESTRAINED AND ENJOINED from further performance of the contract during the pendency of this action until further order of this Court.**

**The Navy may within the next 45 days designate a new contracting officer to make a new responsibility determination. The new contracting officer must obtain written advice from NAVFAC by someone at the flag officer or presidential appointee level as to the pertinent policy considerations and standards of business integrity in order to find awardees responsible in international contracts. This reconsideration should involve a reasoned analysis of the conduct of TOA and the statutory and regulatory factors relevant to the purposes of a responsibility determination. The reasons for finding TOA either a responsible contractor or not must be clearly articulated and consistent with the law and Navy policy. If the Navy selects this alternative as opposed to re-solicitation, it shall serve the new responsibility determination on the parties and file it with the Court. Thereafter, the Court will schedule an oral hearing within 15 days of the delivery of this determination to consider it and rule on lifting the injunction or other possible actions.**

**Plaintiff shall post a bond, with a surety authorized by the Secretary of the Treasury in the amount of $1.00. *See* RCFC 65(c). This amount is established because of the public interest in contractor integrity which benefits both the Plaintiff-protestor and the American public, as well as the Navy**.

The Court will schedule a telephone status conference by separate order to determine the next steps in this litigation.

**It is so ORDERED**.

s/ Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE