# In the United States Court of Federal Claims

Case No. 08-261C
Filed Under Seal: September 23, 2008
Refiled: October 14, 2008
FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| WATTS-HEALY TIBBITTS A JV, | * |
| *Plaintiff*, | * |
|  | * Bid Protest; New Responsibility |
|  | * Determination; Lifting of the |
| v. | * Preliminary Injunction; Arbitrary and |
|  | * Capricious |
| THE UNITED STATES, | * |
| *Defendant,* | * |
| and | * |
| IBC/TOA CORPORATION, | * |
| *Defendant-Intervenor.* | * |

* * * * * * * * * * * * * * * * * * * * * * * * * *

*Michael H. Payne*, *Esquire,* Payne Hackenbracht & Sullivan, Ft. Washington, PA, for Plaintiff.

*Stephen C. Tosini*, Trial Attorney, with whom were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC; *Robert E. Little*, Of Counsel, Department of the Navy, Washington, DC, for Defendant.

*S. Lane Tucker*, Perkins Coie LLP, Anchorage, AK, for Defendant-Intervenor.

**OPINION AND ORDER**

**SMITH**, Senior Judge.

Previously, this Court entered a preliminary injunction against the Navy with respect to the contract at issue in this case. In issuing the preliminary injunction, the Court found that it had no

choice but to find the Contracting Officer's decision arbitrary and capricious. This determination was based on the fact, which was crystal clear to the Court, that no adequate responsibility determination had been made by the Contracting Officer. It appeared that only the most cursory consideration had been made of very serious charges. For example, the Contracting Officer testified that because bid rigging is common in Japan it does not rise to a level serious enough to render the corporation not responsible. Further, even though the Contracting Officer testified that he did re-evaluate the responsibility determination, the Contracting Officer alluded to the fact that because the award had already been made he could not disrupt that award. And finally, the Contracting Officer failed to obtain definitive guidance on the Navy's required level of business integrity for international transactions in cases like this. The Court offered the Navy two choices with regard to the solicitation: 1) either designate a new contracting officer to make a new responsibility determination, or 2) re-solicit the contract. Instead, the Defendant filed a Motion to Stay the Injunction pending Possible Appeal. After denying the Motion to Stay the Injunction, the Court modified the preliminary injunction.

In the modified preliminary injunction, the Court ordered the Navy to make a new responsibility determination by a new contracting officer. The Court ordered that the new contracting officer obtain written advice from NAVFAC, by someone at the flag officer or presidential appointee level, as to the pertinent policy considerations and standards of business integrity in order to find the awardee responsible in international contracts. Further, the Court ordered that this reconsideration involve a reasoned analysis of the conduct of the awardee and the statutory and regulatory factors relevant to the purposes of a responsibility determination. It must also articulate the reasons for finding the awardee either a responsible contractor or not, consistent with the applicable law and Navy policy.

The new responsibility determination was due to be filed within thirty days from the date of the Court's order. The Navy complied and a new responsibility determination in the form of an affidavit of Robert M. Griffin, Jr. was filed by the Defendant. Plaintiff responded to Mr. Griffin's declaration and the Government filed its reply. Argument was held, and at oral argument the Court lifted the injunction for the reasons set forth on the record. This opinion elaborates that decision.

**Procedural History**

On October 5, 2007, the Naval Facilities Engineering Command, Pacific, issued a solicitation requesting proposals to construct the Kilo Wharf extension in Guam. On November 19, 2007, the bidders provided technical proposals to the Navy. Watts-Healy Tibbitts and IBC/TOA Corporation were two of the bidders. On March 26, 2008, Plaintiff was informed that an award had been made to IBC/TOA. Thereafter, on April 10, 2008, Watts-Healy Tibbitts filed its first post-award bid protest requesting a temporary restraining order, a preliminary and a permanent injunction and declaratory judgment arguing that the "American Preference Policy" should have been applied to the IBC/TOA proposal. This was denied in a sealed opinion by this Court filed on April 25, 2008 and unsealed on May 2, 2008.

On May 5, 2008, Plaintiff filed a Motion for Reconsideration of this Court's April 25, 2008 opinion together with a second Motion for Preliminary Injunctive Relief based on additional grounds and an Amended Complaint. After full briefing, on June 9, 2008 the Court heard oral argument on Plaintiff's Motion. The matter was taken under advisement and, on June 17, 2008, the Court held a status conference whereupon the Court denied-in-part Plaintiff's Motion to Reconsider the Defendant's decision not to apply the twenty percent preference but held in abeyance Plaintiff's other contentions. The Court ordered the contracting officer to appear to testify regarding the new facts related to the responsibility issue. On June 26, 2008, Defendant filed a Motion to Reconsider this Order which was subsequently denied. On July 15, 2008, the contracting officer testified before this Court.

On July 18, 2008, the Court entered its sealed Opinion and Order granting Plaintiff's Motion for Reconsideration and granting Plaintiff's Motion for Preliminary Injunction. On July 21, 2008, the Court unsealed the Order of Injunction and on July 23, 2008 unsealed the July 18, 2008 Opinion and Order. A Motion to Stay the Injunction pending Possible Appeal was filed by the Defendant on July 25, 2008, and after full briefing the Court held argument on August 5, 2008. The Motion to Stay was denied and a Modified Order Granting Preliminary Injunction was filed on that date. On August 28, 2008, the Defendant filed its new responsibility determination and the Plaintiff responded. On September 9, 2008, the Court held oral argument on the new responsibility determination. At the conclusion of the argument, the Court lifted the preliminary injunction for the reasons set forth on the record and set forth in more detail below.

## **Facts**[1]

The Naval Facilities Engineering Command, Pacific, issued a solicitation requesting proposals to construct the Kilo Wharf extension in Guam. The Solicitation provided for a Pre-Award Survey/Responsibility Determination, citing FAR 9.104. Among other things, this Solicitation provision provided that the prospective contractor must demonstrate a ". . . satisfactory performance record, and be otherwise eligible to receive an award under applicable laws and regulations." *See* Solicitation, Document 00100, Paragraph 1.24.

To facilitate a contracting officer's determination of responsibility and business integrity, all federal contractors are required to furnish representations and certifications. One of those certifications, pursuant to FAR 52.209-5, entitled "Certification Regarding Debarment, Suspension, Proposed Debarment, and Other Responsibility Matters (Dec 2001)" requires a certification that the corporation has not, within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for any commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or

---

[1] For a full recitation of the facts *see* Published Opinions and Orders dated May 2, 2008, July 21, 2008, July 23, 2008 and August 5, 2008.

commission of embezzlement, theft, forgery, bribery. *Id.*

TOA Corporation (TOA) is a Japanese corporation that specializes in marine construction and dredging and has also performed work on other government contracts, both for Japan and the United States. On two separate occasions in 2007, the Japan Fair Trade Commission (JFTC) required TOA to pay a total 113.9 million yen as surcharges for TOA's violation of Japan's Antimonopoly Law involving bid rigging. *See* Pl. Mem. Ex. A-C. In 2008, TOA also received a business suspension order from the Ministry of Land, Infrastructure, Transport and Tourism, following the company's violation of the Antimonopoly Law. *See* Pl. Mem. Ex. D. At the time it submitted its proposal TOA did not certify that it had any judgments against it. In its Motion to Reconsider and Motion for Preliminary Injunction, Plaintiff alleged that TOA should have disclosed this conduct under FAR 52.209-5. Further, Plaintiff alleged that if TOA had disclosed its violations, the result would have required the contracting officer to conclude that the corporation was not responsible under FAR 9.104.

The Court found that after the contracting officer was alerted to these violations his decision that the awardee was still responsible was arbitrary and capricious and issued a preliminary injunction ordering the Defendant to make a new responsibility determination. The Court ordered the Navy to designate a new contracting officer and that the new contracting officer obtain written advice from NAVFAC by someone at the flag officer or presidential appointee level as to the pertinent policy considerations and standards of business integrity in order to find awardees responsible in international contracts. Further, the Court ordered that this reconsideration involve a reasoned analysis of the conduct of TOA and the statutory and regulatory factors relevant to the purposes of a responsibility determination as well as articulating the reasons for finding TOA either a responsible contractor or not, consistent with the law and Navy policy.

After the issuance of the modified preliminary injunction, the Defendant filed the declaration of Robert M. Griffin, Jr., Assistant Commander for Acquisition for NAVFAC. In the declaration, Mr. Griffin articulates his credentials, including that he has been a member of the Department of the Navy's Senior Executive Service for approximately eight years, has over twenty five years of experience in awarding and administering federal construction contracts, that he currently leads over 900 acquisition personnel, that he is responsible for the contractual business practices, policy and oversight for the Commands' $10 billion annual contract program and that he holds an unlimited contracting officer's warrant. Mr. Griffin further states that he was designated the new contracting officer by Rear Admiral Shear, Commander, NAVFAC and that his declaration constitutes the new responsibility determination as ordered by the Admiral and this Court.

**Discussion**

At the direction of Rear Admiral Shear, the Navy designated a new contracting officer to make a new responsibility determination, in conformance with the Court's order. Plaintiff alleges, however, that the new decision remains arbitrary and capricious as the guidance provided for by Rear Admiral Shear did not furnish or implement a policy to address the question of how to assess responsibility in international contracting; that the new decision was nothing more than a rationalization of the original decision; and that contrary to the conclusions reached by the contracting officer, TOA's past and present behavior belies its claim to have appreciated the seriousness of its prior illegal conduct. *See generally* Plaintiff Response. The Court disagrees.

**A. Rear Admiral Shear Directed Mr. Griffin as to the Pertinent Policy Considerations and Standard of Business Integrity**

In issuing the preliminary injunction, this Court stated:

> The Navy shall make a new responsibility determination by a new contracting officer within 30 days from the date of this Order. The new contracting officer must obtain written advice from NAVFAC by someone at the flag officer or presidential appointee level as to the pertinent policy considerations and standards of business integrity in order to find awardees responsible in international contracts.

Mod. Prel. Inj., filed Aug. 5, 2008, at 2.

It is clear to the Court that the Navy followed this directive by assigning Mr. Griffin, a member of the Senior Executive Service and NAVFAC's senior civilian acquisition official, as the new contracting officer. Griffin Decl. at ¶ 1. Further, Rear Admiral Shear identified the "pertinent policy considerations and standards of business integrity in order to find awardees responsible" in cases in which the awardee violated foreign law with respect to foreign government contracts. *Id.* at Ex. 1. First, Rear Admiral Shear acknowledged TOA's bid rigging sanctions to Mr. Griffin. *Id.* In regard to this, Rear Admiral Shear directed Mr. Griffin to treat TOA's charges and sanctions as being a "commission of an offense lacking business integrity or business honesty" in his consideration of TOA's present responsibility. *Id.* Second, Admiral Shear directed Mr. Griffin "to determine whether TOA's record of integrity and business ethics is satisfactory." *Id.* To determine this, Admiral Shear directed Mr. Griffin to "analyz[e] the presence or absence of preventative or corrective measures and mitigation factors, as well as past offenses that necessitated, or occurred despite such measures. In that regard, you should be guided by the relevant factors set forth at Federal Acquisition Regulation § 9.406-1(a)." *Id.* at 3. And lastly, the Admiral directed Mr. Griffin to "consider any other consideration that [he] believes is germane." *Id.* at 2. Thereafter, Mr. Griffin performed his evaluation.

### B. Mr. Griffin performed a Reasoned Analysis

This Court's Order of Injunction further stated:

> This reconsideration should involve a reasoned analysis of the conduct of TOA and the statutory and regulatory factors relevant to the purposes of a responsibility determination. The reasons for finding TOA either a responsible contractor or not must be clearly articulated and consistent with the law and Navy policy.

Mod. Prel. Inj., filed Aug. 5, 2008, at 2.

With regard to this portion of the Order, the Navy again followed the Court's directive. Specifically, Mr. Griffin weighed the evidence with respect to each of the elements in the regulation that Rear Admiral Shear ordered him to follow "address[ing] each of the [10] factors listed at FAR § 9.406-1(a) in turn." Griffin Decl. at ¶ 6. These regulations would be applied with respect to a responsibility determination for any contractor for which a FAR 9.406-2 "cause for disbarment" has been identified. *Id.* at Ex. 1 at 2. The "regulations make clear that 'the existence of a cause for debarment, however, does not necessarily require that the contractor be debarred,' and directs the agency official to balance the seriousness of the contractor's actions against the 'remedial measures or mitigation factors' before making any debarment decision." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1335 (Fed. Cir. 2001) (quoting FAR 9.406-1(a)). "Debarment and suspension are discretionary actions, FAR 9.402(a); however, mitigation factors are used in making responsibility determinations. . . ." *Impresa*, 238 F.3d at 1335.

Mr. Griffin followed Rear Admiral Shear's direction and applied the standard. Mr. Griffin held a meeting with the senior officials of International Bridge Corporation; the head of TOA's international division; and the head of the TOA division that had been found responsible for bid rigging upon Japanese public contracts. At this meeting Mr. Griffin assessed the credibility of these individuals and received assurances they "were personally committed to the elimination of dango [Japanese historical bid rigging practice] at all corporate levels." *Id.* at ¶¶ 4,6,9,10. None of the TOA senior executives was involved in the bid rigging subject to the JFTC proceedings relevant to this matter. *Id*. at 6,9. These TOA executives further provided assurances that they were unaware of any bid rigging activities upon TOA's contracts with the United States in Japan and that none of those responsible would be involved with the Kilo Wharf contract. *Id.* Evidence of measures to ensure compliance with legal and ethical standards was also provided. Id. at ¶¶ 4,6,7,8.

### C. Mr. Griffin did not abuse his discretion in finding IBC/TOA Responsible

#### 1. The Navy made an "Independent" Determination

It is clear to the Court that the Navy complied with the Court's directive and made an "independent" determination in its new holding finding TOA responsible. Plaintiff, however, alleges that an email between Navy counsel and IBC/TOA's counsel demonstrates that Mr. Griffin

did not make an "independent" determination. Instead, Plaintiff alleges that this inquiry was a sham and that Mr. Griffin's determination was nothing but "smoke and mirrors." Pl. Resp. at 27. Plaintiff alleges this because the email was sent prior to Mr. Griffin's appointment to review the responsibility determination.

In reviewing the email, the Court notes that the email relates to Navy counsel's inquiry regarding facts and circumstances surrounding bid rigging and performance of United States Government contracts in Japan. The email further requested specific evidence and/or facts to demonstrate the separateness of TOA's domestic and international divisions; specific facts concerning mitigative measures with respect to three bid rigging incidents; information concerning performance of other contracts with the United States Government; and additional assurances form high level executives within TOA. *Id.* at Ex. 1 at 2-3. It is apparent to the Court that the email directly asks the questions needed in order to perform the investigation and evaluation of TOA's responsibility that was ordered by this Court. Even though Mr. Griffin had not yet been appointed to make the new responsibility determination, the Navy knew this information would be necessary in order for the new Contracting Officer to make the new responsibility determination. Therefore, Plaintiff's argument that because Mr. Griffin did not ask for the information personally the information obtained was not "independent" is unavailing.

### 2. The Responsibility Determination is supported by Evidence

Plaintiff alleges that the new responsibility determination was not supported by evidence because the Navy did not investigate but only relied on IBC/TOA's own statements. Plaintiff asks this Court to re-weigh the evidence and find the investigation insufficient. This, the Court may not do.

In reviewing an agency's decision in a bid protest, this Court uses the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006). *Arch Chems, Inc. v. United States*, 64 Fed. Cl. 380, 384-85 (2005). Thus, a protestor must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).[2] To determine whether the agency's decision was one that was arbitrary and capricious, the Court must review whether a rational basis for the agency's decision was lacking or a violation of an applicable regulation or procedure occurred during the procurement process. *Impresa,* 238 F.3d at 1333. Furthermore, "[d]eference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations." *M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986). "Responsibility decisions are largely

---

[2] The Government suggests that the proper standard is "substantial evidence." However, the term "substantial evidence" under the APA applies only to formal adjudications, for example--a decision by an ALJ on the record that is used by an appellate body or court. In the case at hand, even though this court is reviewing the evidence, it is an informal proceeding (as that concept is used in Administrative Law) and the standard is, therefore, arbitrary and capricious.

a matter of judgment, and contracting officers are normally entitled to considerable discretion and deference in such matters.  When such decisions have a rational basis and are supported by the record, they will be upheld." *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002).   Although the Court might not agree with the Navy's decision finding TOA responsible, it may not "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Congress has established the Navy to make these types of decisions and others.  The role of the Court is to ensure the law is upheld.  Only if the Navy violates a law, regulation or has no rational basis or an improper purpose may the Court take judicial action.

The evidence and process reflected by the Government's actions meet the standard for a decision that is not arbitrary and capricious. The Government proffered documents, including evidence concerning the Japanese government's acceptance of TOA's mitigative measures, as well as providing Mr. Griffin's declaration detailing a face-to-face meeting with TOA officials indicating TOA's assurances of present and future commitments to lawful conduct.  Mr. Griffin found that TOA was committed to eliminate bid rigging and that TOA was continuing to do everything possible to avoid future occurrences of bid rigging.   In addition, Mr. Griffin reviewed TOA's past performance evaluations, reputation in the industry and ability to perform the contract.  *See generally* Griffin Decl.

 Even though the Court might not agree that it is in the best interest of the United States to contract with a company that has been sanctioned not only once, but on at least three separate occasions for bid rigging, the Court may not "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park,* 401 U.S. at 416.  It must also be emphasized that the purpose of the responsibility determination and this opinion is not punitive, it is not for the purpose of punishing TOA. Therefore, because Mr. Griffin's decision is not arbitrary and capricious, the Court must defer to the well-written decision of Mr. Griffin.   Thus, the Court cannot find that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  It should be noted, however, that Plaintiff's initial concerns were certainly substantially justified.  Plaintiff vindicated the public's right to have an adequate decision made.

## **Conclusion**

For the reasons set forth above, the Court hereby lifts the Modified Preliminary Injunction. The Clerk is directed to dismiss this case and enter final judgment.  The parties are to file any redactions within 10 days from the date of this opinion.  After the redactions have been filed, the Court will issue its published opinion.

**It is so ORDERED**.

 s/ Loren A. Smith
LOREN A. SMITH,
SENIOR JUDGE